LAW OFFICES OF
# NEAL H. ROSENBERG

9 MURRAY STREET
SUITE 4 WEST
NEW YORK, NEW YORK 10007-2281

TELEPHONE:(212) 732-9450
TELECOPIER: (212) 571-9893
neal.rosenberg@nyedlaw.com

September 29, 2015

Mallory O. Sullivan
First Deputy Director, Office of Personnel Investigation
Division of Human Resources
New York City Department of Education
65 Court Street, Rm 200
Brooklyn, New York 11201

Dear Ms Sullivan:

In furtherance of our attempt to permit Ms. Richardson to be employed with either the Department of Education directly or a vendor to the Department of Education we submit her response to the allegations against her.

Please be reminded that she never saw the report dated August 14, 2012 until you kindly provided it to me.

I thank you for your cooperation in this matter.

Very truly yours,

Neal H. Rosenberg

cc: Rosemarie Richardson

Ms. Rosemarie Richardson
622 East 20th Street apt. 9B
New York, NY 10009
c. 646-369-4001
roerich7@aol.com

September 21, 2015

Law Offices of Neal H. Rosenberg
9 Murray Street
Suite 4 West
New York, NY 10007-2281
t. 212-732-9450
neal.rosenberg@nyedlaw.com

Dear Mr. Rosenberg:

This flawed investigation has destroyed my career in the New York City Department of Education and resulted in significant financial losses and irreparable damage to my career and reputation. The net result of this flawed investigation was to experience a harassed and intimidating work environment. As a result, of these tactics I could not continue as a Department of Education (DOE) employee.

The OSI August 14, 2012 letter of this investigation was lost by the DOE, and I had no chance for review. Also, the investigator by asking detailed questions and denying me access to the case, documents, CAP and timelines involved in the investigation never allowed me to seek accurate answers or the truth. OSI's intention was only to liable me. As further proof of their refusal to cooperate with their own investigation was their sole reliance on third party gossip rather than doing true investigative work such as checking DOE phone records on June 28, 2011 to correctly determine if in fact there was a DOE phone conference between myself and said Mother A, or if the parent was lying. The failure of OSI to do this taints their "investigation."

I will now cite the specific concerns over this flawed investigation:

In reference to the Division of Human Resources, Office of Personnel Investigation, OSI report dated July 28, 2015 found that my security clearance is denied due to my adverse employment history with the New York City Department of Education (DOE). While employed as an Educational Administrator for the DOE, I was the subject of an OSI investigation on December 16, 2011. This report found that in my position as a Committee on Preschool Special Education (CPSE) Administrator, I failed to follow the timelines under Section 200.16 of the NYS Regulations and Section 4410 of Education Law Article 89, I failed to respond to the request of both a parent and service provider to change a student's Individualized Education Plan (IEP), I failed to contact said student's

mother and service provider to review and ensure that they could be in attendance during an IEP review, and I falsely documented that said mother had participated, via teleconference, in the annual review of her child's IEP and never had the telephone conference at CSE on June 28, 2011." Why has OSI never established a timeline for the case as a whole nor does it share timelines unique to CPSE Administrator Lisa Saracuse or myself? The complaint and investigation hinges on one case, and one meeting that is blatantly biased and without proof assumes that Mother A and Christopher Treiber, Director of AHRC are correct without corroborating documentation.

In response to both the OSI letter dated July 28, 2015 and the OSI letter dated August 14, 2012 (of which I was never mailed a copy, nor was it placed in my personnel files or archived files but only secured through the Law Offices of Neal Rosenberg by email on September 5, 2015) from Division of Human Resources, Office of Personnel Investigation is the following:

How could I have failed to follow the timelines when the case was originally opened with another CPSE Administrator that I was never made aware of and the timelines referenced in the letter dated August 14, 2012 is murky? If I were to prepare for an Impartial Hearing I would make certain that I knew the exact timelines and not cite "around September 2011" as a hard date. This vague and uncertain language could not be defended at an Impartial Hearing yet it was used to destroy my career!

How could I have failed to respond to the request of said Mother and service provider to change a student's IEP when in fact an AR2P recommendation by definition is a change to the IEP?

How could I have failed to contact Mother to ensure her attendance during an IEP review when I had to have a prior conversation with said Mother to obtain a phone number to hold the meeting at a specific date, time and room with DOE telephone access at the CPSE office before the meeting commenced on June 28, 2011?

How could I have falsely documented that said Mother had participated, via teleconference? OSI has alleged fraud to my reputation. An OSI allegation stated I unilaterally had a meeting with myself and falsified the IEP document. OSI has failed to investigate this allegation with no apparent investigation of the DOE telephone recordings made on June 28, 2011 from a DOE telephone I conducted at CPSE with said Mother. Why did OSI suppress it's own investigation by not checking phone records? Incidentally, Mother A was urgent to have the meeting as soon as possible and agreed prior to have the meeting on the phone with a T for parent signature due to her busy schedule as a doctor with a new position.

The OSI August 14, 2012 letter written by Ms. Berardino stated, "Mother insisted that she did not have a telephone conversation with Ms. Richardson on June 28, 2011. In fact, Mother A insisted that she had just changed jobs at that time and could not have been reached by telephone. Furthermore, Mother A was adamant that she would never have agreed to keep the same IEP when she had been advocating for her son to receive

additional services." I absolutely had to have had her telephone number to reach said Mother to schedule and conduct the meeting on June 28, 2011 by DOE telephone at CPSE as requested by Mother which was to change agencies not increase her child's services on June 28, 2011. Incidentally, an AR 2P is by definition a change to the IEP, therefore Mother A never kept the same IEP.

In the OSI August 14, 2012 letter, Ms. Berardino wrote, As a result, "around November 2010," Mother A also requested that Student A be re-evaluated. However, according to Mother A, she never received a reply from the CPSE." It should be noted (incorrectly and in contradiction to the CPSE SOPM) OSI called this an annual review rather than a requested review. OSI should have understood that the parent had an existing IEP and was seeking a modification to the existing IEP. Consistent with the CPSE SOPM this is referred to as a requested review. Regrettably OSI confused an annual review with a requested review (inconsistent with CPSE SOPM). What letter "around November" 2010? What date was it written? What date was it received by the CPSE? Why is the OSI timeline so blurry? In the OSI August 14, 2015 letter, on page 3 is not "around November" rather vague for a timeline OSI is accusing me of being out of compliance? When in November? Was it November 1st or perhaps November 30th?

In the OSI August 14, 2012 letter, Ms. Berardino wrote, "Mother A further stated that, in April 2011, after several attempts to reach CPSE Administrator Lisa Saracuse via telephone, Ms. Saracuse informed her that she was no longer Student A's CPSE Administrator, but the case had been assigned to Ms. Richardson. Ms. Richardson did not return any of her phone calls." What date and what time is OSI citing? Apparently OSI did not consider that the case was shared between two Administrators and failed to determine the date the case was transferred. Mother A stated I could not return any of her phone calls because she had just changed jobs at the time and could not have been reached by telephone. Did Mother A not have a home or cell phone? If I couldn't reach her by telephone how could I have scheduled a meeting she alleged I never had? Again OSI could never determine if the parent was telling the truth because they refused to check the DOE phone records on June 28, 2011. The bias of OSI to blatantly accept the Mother's word and suppress its own investigation suggests a conflict of interest and very questionable practices.

How could I answer questions at the OSI hearing conducted on December 16, 2011 by investigator Steel, when not only did I not have access to the official DOE file on said student and I was never informed what the meeting was about or who was in question until I arrived that day with CSA representative Phyllis Williams? I was told by investigator Steel to answer detailed questions based on no information whatsoever I had for a meeting that occurred seven months prior. OSI asked me to answer detailed questions about the steps leading to an IEP meeting and possible IEP participants based on a complex sequence of events (timelines) between two different CPSE Administrators, Lisa Saracuse and myself. OSI refused to cooperate in their own investigation by denying me the opportunity to have the official student records, documents, CAP access and timelines of events that allegedly occurred between two different CPSE Administrators. Did OSI seek factual answers to their own investigation?

Furthermore, the July 28, 2015 OSI report stated, "You were given the opportunity to review the above information with the Office of Personnel Investigation and to provide information in support of your application during your review, conducted on 7/20/2015." This is a blatant falsehood and should be investigated. I was never given an opportunity to review the above information (What Information) with Office of Personnel Investigation nor any information in support (What Information in Support) of my application (What application) during my interview, conducted on 7/20/2015. I was never even in possession of the August 14, 2012 letter from OSI written over three years earlier nor told why I was "InEligible" status or given a reason for my required appearance to OSI on July 20, 2015.

In the OSI letter dated August 14, 2012, Ms. Berardino wrote "In September 2011, Mother A reported to Mr. Christopher Treiber, Director of Advocacy Services, AHRC New York City that, during the 2010-2011 school year, the CPSE had neglected to re-evaluate Student A's IEP despite her insistence and that of the service providers." Did OSI not realize that students are evaluated not IEP's? Who has the due process right the student or the IEP? Was Lisa Saracuse assigned Administrator at that point? What letters were filed for a re-evaluation? The meeting I held with said Mother on June 28, 2011 three months earlier was a requested review by Mother to change agencies, there was no mention or letter addressed to me I had in my possession requesting a re-evaluation and additional services. Where were the teacher and service providers' justification letters for additional services? What dates were these letters? If in fact there were letters, were they certified, return receipt requested?

In the OSI letter dated August 14, 2012 Ms. Berardino wrote, "Mr. Treiber stated that, under Section 200.16 of the New York State Regulations of the Commissioner of Education, and under Education Law, Article 89, subsection 4410, the CPSE should have responded to Mother A's request for evaluation within 90 days, but did not. Moreover, the CPSE had 30 days within which to contact Mother A and acknowledge the request for re-evaluation." Did Mr. Treiber want to attend as a mandated participant? Is he a clinician or teacher? Where is his letter requesting participation? In what capacity was he a mandated participant to the IEP consistent with the practices set forth in the CPSE SOPM? Did the said Mother or Mr. Treiber file an EV-1P on Preschool Letterhead or was a C-2P letter ever generated? Furthermore, has OSI suggested I violated LRE PL 94.142 by faulting me for not arranging for unnecessary testing? Why would progress reports by current providers not be relevant by the CPSE? Administrator Lisa Saracuse conducted the initial evaluation on said student. What were the dates of the initial testing evaluations and the date of the initial IEP meeting? Why was the timeline so blurred in the OSI investigations?

In the OSI letter dated August 14, 2012 Ms. Berardino wrote, "Lastly, Mr. Treiber explained that, in order to change a student's IEP, the student's parent and service provider must be present. However, neither Mother A, nor the service provider, Functional Life Achievement, Inc., was present at Student A's annual IEP review on June 28, 2011; instead, Ms. Richardson was the only person present." This was a blatant and

false allegation. This was not an annual review meeting but a requested review by the Mother to change service provider agencies and said Mother was on the telephone with me. I believe said Mother and Mr. Treiber are confusing the reconvene meeting with an annual review. OSI took Mr. Treiber's word that the service provider must be physically present to make the IEP amendment valid. In fact based on the actual parental request at a live meeting we were able to correctly amend the IEP.

In the OSI August 14, 2012 letter Ms. Berardino wrote, "In January 24, 2012, investigator Steel interviewed Mr. Donegan, Committee on Special Education ("CPSE"), Chairperson, at OSI, in the presence of Carol Atkins, CSA Representative. At the time, Mr. Donegan stated that he had no information about this particular case. In the OSI August 14, 2012 letter on page 4 Ms. Bernardino wrote, "At that time, Mr. Donegan stated that he had no information about this particular case." Yet in the same OSI letter on page 6 Ms. Berardino wrote "Ms. Richardson denied that Mr. Donegan, her supervisor, had spoken to her about Mother A's complaint." This is a false allegation and contradiction in accusations to my credibility and professionalism by Ms. Berardino. How could Mr. Donegan have spoken to me about this case when he in fact knew nothing about it himself? This is another example of OSI's false and outrageous allegations.

In the same letter, Ms. Berardino wrote, "Mr. Donegan stated that, during the 2010-2011 school year, there was a lot of turnover in the CPSE office. He said that, at the time, Ms. Richardson was new to the job, the environment was chaotic, the caseload was high, and this case must have fallen through the cracks." See footnote 13 "Investigator Steel's notes did not indicate whether these statements, or portions thereof, were direct quotes." Nevertheless, the statements written by Ms. Berardino, who replaced investigator Steel, were Mr. Donegan's absolute answers.

In the OSI August 14, 2012 letter Ms. Berardino wrote, "When questioned, Ms. Richardson was very evasive and refused to explain her responsibilities and the referral process for preschool students. Furthermore, Ms. Richardson did not recall handling Student A's case, and said that she was not familiar with Student A or Mother A." OSI is contradicting itself because they denied me the ability to answer their questions in detail. This was one of a thousand cases handled seven months prior to the OSI investigation of December 16, 2011. How could I possibly remember specific details for every case I handled?

In the OSI letter dated August 14, 2012 Ms. Berardino wrote, "During the interview, investigator Steel showed Ms. Richardson a copy of Student A's IEP, dated June 28, 2011, and entitled "Final Notice of Recommendation/Modification of IEP. Ms. Richardson acknowledged that she had filled it out and that it contained her signature, but could not recall any specifics, including the alleged teleconference call with Mother A." This is an outrageous allegation. I did in fact acknowledge my signature line and explained the T was for telephone conference with said Mother conducted over the phone who in fact gave me permission to sign with a T prior to the meeting. I never said I could not recall any specifics, including the alleged teleconference call with Mother A. If my signature was there and there was a T for teleconference call I conducted the call with

Mother A's permission to sign a T for a DOE telephone conference at CPSE on June 28, 2011. Why didn't OPI investigate the DOE telephone records on June 28, 2011?

In the OSI letter dated August 14, 2012 Ms. Berardino wrote, "When questioned about why Student A's service provider had not been present during that meeting since the name and the signature of the service provider were left blank, Ms. Richardson stated that it is not unusual for a service provider to be absent during an IEP meeting." This is a false and unfounded allegation. I never would have made such an outrageous and erroneous statement. If a requested meeting by a Mother was to change agencies it could be conducted over the phone and a service provider could be present or reached by phone, but not mandatory. If it were an annual review (which it was not) of course service providers would be present for the meeting as stated in the CPSE SOPM.

In the OSI letter dated August 14, 2012 Ms. Berardino wrote, "Ms. Richardson would neither confirm nor deny whether it was the policy to attempt to accommodate a parent to attend an IEP meeting in person, rather than a telephonic conference call. Additionally, she could not say whether she had documented any attempts to contact Mother A and/or the service provider before scheduling the June 29, 2011 IEP meeting." OSI is incorrect when they refer to the IEP meeting being held on June 29, 2011. The meeting was held on June 28, 2011. This is an outrageous allegation. It has always been the policy to attempt to accommodate a parent to attend an IEP meeting in person, rather than a telephonic conference call. Of course I contacted Mother A. How else would I have held a DOE telephone conference on June 28, 2011 at CPSE with said Mother on the telephone? Once again why didn't OSI check the DOE phone records?

In the OSI letter dated August 14, 2012, Ms. Berardino wrote, "Ms. Richardson was not able to articulate what occurs when a case is transferred from one CPSE administrator to another or what the responsibilities of the newly assigned CPSE administrator would be when a case is transferred. Ms. Richardson did not recall whether Ms. Saracuse was the first CPSE administrator assigned to Student A. Ms. Richardson did not recall receiving any cases from Ms. Saracuse." In fact, I did state that CPSE Administrator Lisa Saracuse handled student A's initial CPSE case and that I did not provide the initial services, she did. My CPSE Administrative responsibility requested by said Mother was to reconvene to have the agency changed. Nothing more. I do emphatically recall not receiving this case from CPSE Administrator Lisa Saracuse. What was CPSE Administrator Lisa Saracuse's timeline in this case?

How could I have an adverse employment history with the DOE? My career began working at 65 Court Street, Human Resources with Supervisor, Alice Stasinski. I worked as a Special Education Teacher, Supervisor of Special Education, Instructional Support Specialist, Assistant Principal I.A., CSE Teacher Assigned and CPSE Administrator from 1971 to 2012. I never had a blemish to my career and reputation and I received only "S" ratings during the 30 plus years in service with the DOE.

In conclusion the OSI Report Case No. 11-9350 dated July 28, 2015 and the OSI August 14, 2012 letter are alleged, unsubstantiated, flawed and open for legal action.

Sincerely,

Rosemarie Richardson