# Exhibit

# "A"

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York ▾

| | | |
|---|---|---|
| ROSEMARIE RICHARDSON | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. 1:16-cv-01364 |
| CARMEN FARINA, et al. | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* See attached rider 1.

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Jay B. Itkowitz
Itkowitz PLLC
26 Broadway, 21 Floor
New York NY 10004

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: 2/22/2016

/s/ P. Canales

*Signature of Clerk or Deputy Clerk*



## Rider 1

Defendants:

CARMEN FARINA, KATHERINE G. RODI, CANDACE R. MCLAREN, MIRIAM M. BERARDINO, ANNA STEEL, THE NEW YORK CITY DEPARTMENT OF EDUCTION, THE NEW YORK CITY BOARD OF EDUCATION AND THE CITY OF NEW YORK

Address (for all defendants):

52 Chambers Street
New York, NY 10007

61172

Jay B. Itkowitz (JBI-5349)
ITKOWITZ PLLC
26 Broadway, 21st Floor
New York, New York 10004
(646) 822-1801
jitkowitz@itkowitz.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ROSEMARIE RICHARDSON

                             Plaintiff,                    **Index No.   1:16-cv-01364**

               -against-                    **<u>VERIFIED COMPLAINT</u>**

CARMEN FARINA, KATHERINE G. RODI,      **<u>PLAINTIF DEMANDS A</u>**
CANDACE R. MCLAREN, MIRIAM M.          **<u>JURY TRIAL</u>**
BERARDINO, ANNA STEEL, THE NEW YORK CITY
DEPARTMENT OF EDUCTION, THE NEW YORK
CITY BOARD OF EDUCATION AND THE CITY OF
NEW YORK

                        Defendants.
-----------------------------------------------------------------X

       Plaintiff ROSEMARIE RICHARDSON ("Plaintiff" or "Richardson"), by her

attorneys, Itkowitz PLLC, as and for her complaint against the Defendants CARMEN FARINA

("Farina"), KATHERINE G. RODI ("Rodi"), CANDACE R. MCLAREN ("McLaren"),

MIRIAM M. BERARDINO ("Berardino"), ANNA STEEL ("Steel"), THE BOARD OF

EDUCATION OF THE CITY OF NEW YORK ("BOE") AND/OR THE DEPARTMENT OF

EDUCATION OF THE CITY OF NEW YORK  ("DOE") (collectively "Defendants"), alleges

as follows:

### THE PARTIES

    1.     Plaintiff resides at 622 East 20th Street, New York, New York 10009.

2.      At all relevant times, Richardson was a tenured administrator in the New York City public school system with over 30 years of experience.

3.      Defendant Farina is the Chancellor of the BOE and/or the DOE and the chief administrator of the New York City public schools.

4.      At all relevant times, Defendant Rodi was and is employed by the Defendant DOE as Director of the Office of Employee Relations.

5.      Upon information and belief, at all relevant times, Defendant McLaren is and/or was employed as the Director of the Office of Special Investigations of the DOE.

6.      Upon information and belief, at all relevant times Defendant Berardino is and/or was a Confidential Investigator for the Office of Special Investigations for the DOE.

7.      Upon information and belief, at all relevant times Defendant Steel was a Confidential Investigator for the Office of Special Investigations for the DOE.

8.      The BOE and/or the DOE is a public corporation with a principal location in the County of New York.

9.      The BOE and/or the DOE operates the New York City public schools.

10.     The BOE and/or the DOE is a person within the meaning of 42 USC § 1983.

11.     The BOE and/or the DOE maintains a principal place of business at 52 Chambers Street, New York, New York.

## JURISDICTION AND VENUE

12.     Jurisdiction over this action is based upon 28 U.S.C. §§ 1331 and 1343(a)(3) as this matter involves federal questions under 42 USC § 1983 and the Fourteenth Amendment of the United States Constitution.

13.     Jurisdiction is also predicated on 28 USC § 1343(a) in that the claims

2

asserted herein provide for the protection of civil rights.

14.     Plaintiff also seeks declaratory relief pursuant to 28 USC §§ 2201 and 2202.

15.     This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 USC § 1367 because the state claims are so related to the federal claims that they form part of the same case and/or controversy between Plaintiff and Defendants.

16.     Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b).

17.     In the event Plaintiff prevails in this proceeding, she will be entitled to attorneys' fees and costs pursuant to 42 USC § 1988.

## NATURE OF CLAIM AND FACTS GIVING RISE TO THE COMPLAINT

18.     The BOE and/or the DOE deprived Ms. Richardson of her constitutional rights pursuant to the 14th Amendment of the United States Constitution and her statutory rights pursuant to the New York State Education Law § 3020-a by subjecting Ms. Richardson to disciplinary proceedings and placing Ms. Richardson on an "ineligible list" thereby stigmatizing her and damaging her liberty and property interests, all without the benefit of a hearing as required by the United States Constitution and the New York State Education Law.

19.     On or about October 13, 2011, the Office of Special Investigations ("OSI") received a referral from the Special Commissioner of Investigation ("SCI") claiming Richardson, a supervisory employee with tenure, had "falsely documented" that a mother had participated in a telephone conference with the respect to a student's Individualized Education Program ("IEP").

20.     On or about November 29, 2011, upon information and belief, Defendant Steel, an OSI investigator, notified Richardson that she was the subject of an unspecified

investigation.

21.     Defendant Richardson was not given any details of the allegations which had been purportedly asserted against her.

22.     Subsequently, upon information and belief, Defendant Steel, the OSI investigator conducted an "interview" with Ms. Richardson on or about December 16, 2011.

23.     During the "interview" for the first time, Richardson was advised that a parent had asserted that Richardson had "falsely documented" that the parent had participated in a telephone conference on June 28, 2011 with the respect to the parent's child's IEP.

24.     During the "interview" Richardson was advised she had failed to contact the student's service provider to schedule the IEP conference, failed to contact the mother of the student to schedule the IEP conference and failed to follow various "timelines" imposed by the NYS regulations and the Education Law.

25.     Prior to the "interview" at no time was Richardson given any notice whatsoever of any specific complaints about her performance, let alone an opportunity to prepare a defense.

26.     At the "interview", Richardson denied and herein denies the allegation that she "falsely documented" that the parent had participated in a telephone conference on June 28, 2011 with the respect to the parent's child's IEP.

27.     At the "interview", Richardson denied and herein denies that she had failed to contact the student's service provider to schedule the IEP conference, failed to contact the mother of the student to schedule the IEP conference and failed to follow various "timelines" imposed by the NYS regulations and the Education Law.

28.     At the "interview", Richardson was not permitted access to her files.

4

29.     At no time prior to and/or after the "interview" was Richardson given access to telephone records maintained by DOE in the regular course of business with respect to IEP proceedings.

30.     To Richardson's knowledge, nothing ever occurred after the "interview" on December 16, 2011.

31.     Richardson retired in July of 2012.

32.     Unbeknownst to Richardson, OSI continued to process the complaint without notice of any kind to Ms. Richardson.

33.     At no time was Richardson given any written notice of any specific allegations and an opportunity to contest the same.

34.     On or about August 14, 2012 in OSI Case #11-935, Defendant Berardino recommended that the allegations be "substantiated" that Richardson had purportedly "falsely documented" that the subject parent had participated in a telephone conference on June 28, 2011, failed to contact the student's service provider to schedule the IEP conference, failed to contact the mother of the student to schedule the IEP conference and failed to follow various "timelines" imposed by the NYS regulations and the Education Law.

35.     On or about August 14, 2012, Defendant Berardino recommended that Richardson "be placed on the Ineligible List and not be considered for future employment with the DOE".

36.     The recommendation by Defendant Beradino was "approved" by Defendant McLaren.

37.     At no time did Defendants Beradino and/or McLaren and/or the BOE and/or the DOE provide Richardson with notice that any allegations had been "substantiated" and/or "approved".

5

38.     At no time did Defendants Beradino and/or McLaren and/or BOE and/or the DOE provide Richardson with notice that she had been placed on" the Ineligible List and not be considered for future employment with the DOE."

39.     Ms. Richardson did not find out about this administrative action until July 20, 2015.

40.     The circumstances by which she discovered this action occurred when she applied for an educational position with Manual Therapy Center, Inc. on April 23, 2015.

41.     As part of the vetting process, her name was submitted for vetting for security clearance with the DOE.

42.     Her application for security was denied and it was not until July 20, 2015 that she learned that the DOE had placed Richardson on an "Ineligible List."

43.     On July 28, 2015, Richardson received a letter for the DOE advising her that because of a "report" dated August 14, 2012, Richardson denied a "security clearance" to work as an Educational Administrator for the DOE. A copy of the letter is annexed as Exhibit "1".

44.     Richardson had never received prior notice of any "report" placing her on an "Ineligible List."

45.     In further investigating the circumstances of this event, she checked her personnel file with DOE and discovered that no record of such action was contained in her personnel file.

46.     It took a letter from her prior counsel, Neal Rosenberg, dated August 12, 2015 to dislodge the offending letter documenting the administrative action from DOE which he received on or about September 9, 2015 in which he received the offending determination via

6

email from Mallory Sullivan. A copy of the Rosenberg letter and response are respectively annexed as Exhibits "2" and "3".

47.     Subsequently, Mr. Rosenberg requested that Ms. Sullivan reconsider the determination in issue via letter dated September 29, 2015. A copy is annexed as Exhibit "4".

48.     By letter dated October 20, 2015, Katherine G. Rodi, Director of the Office of Employee Relations for the DOE, "affirmed" the original findings in the "approved" recommendation dated August 14, 2012. A copy of the letter dated October 20, 2015, which was mailed by Rodi to Richardson, is annexed as Exhibit "5".

49.     On January 11, 2016, Richardson served and filed a Notice of Claim against the BOE and DOE and the Comptroller of the City of New York alleging that the foregoing actions by the OSI, the DOE, the Board of Education and the City of New York, deprived Ms. Richardson of her constitutional and statutory rights to due process and to defend the allegations before an impartial court and/or hearing officer and the right to confront those who accused her of the charges which were substantiated. A copy of the Notice of Claim is annexed as Exhibit "6".

50.     More than thirty days has elapsed since the Notice of Claim has been filed against the DOE and BOE and the claim has not been adjusted.

51.     Upon information and belief, Richardson remains on the "Ineligible List" and continues to be disqualified from being employed, in any capacity, by the BOE and/or DOE and/or any contractor who contracts with the DOE and/or BOE.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Violation of the Fourteenth Amendment/Liberty Interest)**

52.     Plaintiff repeats and realleges all of the allegations set forth in paragraphs "1" through "51" as if fully set forth below.

7

53.     The placement of Richardson on the BOE and/or DOE's "Ineligible List" has deprived Richardson of due process of law.

54.     In continuing to disqualify Richardson from employment with the DOE and/or BOE and/or any contractor who contracts with the BOE and/or DOE, the Defendants have injured Richardson's good name and reputation and have foreclosed her from practicing her profession without due process and/or the ability to contest the allegations arising from the "investigation" of Richardson.

55.     As a proximate result of Defendants' conduct, Richardson has suffered and continues to suffer substantial losses in earnings and other benefits she would have received absent Defendants' improper action.

56.     As a further proximate result of the above-described actions, Richardson has suffered humiliation, mental pain and anguish. These injuries justify an award of compensatory damages in an amount to be determined by a jury at trial.

### AS AND FOR A SECOND CAUSE OF ACTION
### (Violation of Education Law)

57.     Plaintiff repeats and realleges all of the allegations set forth in paragraphs "1" through "56" as if fully set forth below.

58.     Section 3020-a of the New York Education Law provides that "No person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause…"

59.     New York Education Law § 3020-a provides for a hearing before a single hearing officer and § 3020-a(5) requires notice of a hearing officer's decision after which an employee may make an application to the New York Supreme Court.

60.     An employee who resigns with tenure retains the rights of a tenured

8

employee after resignation.

61.     The failure to afford Richardson a hearing before an impartial hearing officer and to provide Richardson with a notice and opportunity to be heard with respect to any allegations regarding her conduct, violated Education Law § 3020-a.

62.     Accordingly, Richardson is entitled to compensatory damages in an amount to be determined by an award of compensatory damages in an amount to be determined by a jury at trial.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Violation of CPLR Article 78)

63.     Plaintiff repeats and realleges all of the allegations set forth in paragraphs "1" through "62" as if fully set forth below.

64.     In placing Richardson on an "ineligible list" and in "affirming" such determination without notice and an opportunity to be heard,  Defendants have acted in an arbitrary and capricious manner, have committed an error in law and procedure and/or an abuse of discretion in violation of § 7803(3) of New York's Civil Practice Law and Rules.

65.     Accordingly, Richardson respectfully requests that the Court annul the determination placing her on "ineligible list" so that she may be employed by the BOE and/or DOE and/or any contractors doing business with the BOE and/or DOE.

WHEREFORE, Plaintiff demands judgment as follows:

(i)     On the First Cause of Action, a money judgment in favor of Plaintiff and against Defendants, plus attorney fees, costs and expenses, in an amount  of damages in an amount to be determined by a jury at trial;

(ii)     On the Second Cause of Action, a money judgment in favor of Plaintiff and against Defendants, plus attorney

9

fees, costs and expenses, in an amount of damages in an amount to be determined by a jury at trial; and

(iii)    On the Third Cause of Action, annulling the determination by the Defendants to place Plaintiff on an "ineligible list" on the grounds that such determination is arbitrary and capricious, an error in law and procedure and/or an abuse of discretion in violation of § 7803(3) of New York's Civil Practice Law and Rules.

(iv)    Enjoining the Defendants from placing Plaintiff on an "Ineligible List" without first affording her Due Process of Law;

(v)    Granting Plaintiff such other and further relief as this Court deems just and proper.

Dated:    New York, New York
February 22, 2016

**ITKOWITZ PLLC**
*Attorneys for Plaintiff*

By:    */s/ Jay B. Itkowitz*
Jay B. Itkowitz (JBI-5349)
26 Broadway, 21st Floor
New York, New York 10004
(646) 822-1801
jitkowitz@itkowitz.com

10

## **VERIFICATION**

STATE OF NEW YORK          )
                          )     ss:
COUNTY OF NEW YORK         )

      ROSEMARIE RICHARDSON, being duly sworn, deposes and says:

      I am the Plaintiff in this matter. I have read the foregoing Verified Complaint and know the contents thereof. The same is true to my own knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.

Rosemarie Richardson

Sworn to before me this
2_ _ day of February 2016

Notary Public

# Exhibit

## "1"



**Department of Education**
Carmen Fariña, Chancellor

## THE NEW YORK CITY DEPARTMENT OF EDUCATION

Division of Human Resources
Office of Personnel Investigation
65 Court Street, Room 200 – Brooklyn, NY 11201

July 28, 2015

Rosemarie Richardson
622 East 20th St, Apt 9B
New York, NY 10009

License/Title/Position: Special Education Supervisor/Teacher/Manual Therapy Center/DOE Vendor
Applicant ID#: 0303676
PRP #: 128,638

Dear Ms. Richardson,

The Chief Executive Officer of the Division of Human Resources, through his designee, has reviewed your application for security clearance. After a thorough review in accordance with the applicable provisions of law, your application has been denied.

The specific reason for the denial of your application is based upon due consideration of the following:

| Employer | Employment Range | Reason |
|---|---|---|
| New York City Department of Education | 9/11/87 – 7/1/2012 | Office of Special Investigations (OSI) Report Case No. 11-9350 |

Your application for security clearance is denied due to your adverse employment history with the New York City Department of Education (DOE). While employed as an Educational Administrator for the DOE, you were subject of an OSI Report, dated 8/14/12. This report found that, in your position as a Committee on Preschool Special Education (CPSE) Administrator, you failed to follow the timelines under Section 200.16 of the NYS Regulations and Section 4410 of Education Law Article 89, you failed to respond to the request of both a parent and service provider to change a student's Individualized Education Plan (IEP), you failed to contact said student's mother and service provider to review and ensure that they could be in attendance during an IEP review, and you falsely documented that said mother had participated, via teleconference, in the annual review of her child's IEP.

If granted security clearance, you will be working in a position where you will be responsible for both, the management and the implementation of various student IEP's. Your inability to properly carry out the duties and responsibilities of the position you held as a DOE employee causes grave concern when considering your ability to satisfactorily perform in the position you are seeking. Granting you security clearance would pose an unreasonable risk to the safety and welfare of the school community and to taxpayer interests.

You were given the opportunity to review the above information with the Office of Personnel Investigation and to provide information in support of your application during your interview, conducted on 7/20/2015.

We have reviewed your entire file (including all information submitted by you during your interview) in making this decision.

Telephone (718) 935-2665 - Fax (718) 935-4366/5778

Please be advised that you are unable to reapply for employment for twelve (12) months from the date of this letter.

Sincerely,

The Office of Personnel Investigation
Division of Human Resources
NYC Department of Education

# Exhibit

# "2"

LAW OFFICES OF
# NEAL H. ROSENBERG

9 MURRAY STREET
SUITE 4 WEST
NEW YORK, NEW YORK 10007-2281

TELEPHONE:(212) 732-9450
TELECOPIER: (212) 571-9893
neal.rosenberg@nyedlaw.com

August 12, 2015

The New York City Department of Education
Division of Human Resources
Office of Personnel Investigation
65 Court Street, Room 200
Brooklyn, NY 11201

Re:     Rosemarie Richardson

Dear Gentlemen:

This office has been retained by the above referenced regarding the letter she received (copy attached).

I would like to review her file and discuss this matter further in light of the fact that she can not now be employed as she would like.

Very truly yours,

Neal H. Rosenberg

CC: Rosemarie Richardson

# Exhibit "3"

**Neal Rosenberg**

| | |
|---|---|
| **From:** | Sullivan Mallory [MSullivan3@schools.nyc.gov] |
| **Sent:** | Wednesday, September 09, 2015 2:21 PM |
| **To:** | Neal Rosenberg |
| **Subject:** | R. Richardson |
| **Attachments:** | R.Richardson.pdf |

Good afternoon,

Please find attached a copy of the requested report. It is our understanding you exhausted all regular channels for a copy of said report, and were unsuccessful in securing a copy.

Thank you,
Mallory Sullivan

Mallory O. Sullivan
First Deputy Director, Office of Personnel Investigation
Division of Human Resources
New York City Department of Education
65 Court Street, Rm 200
Brooklyn, New York 11201
(718) 935-4710 direct
MSullivan3@schools.nyc.gov

Confidentiality Notice: This e-mail communication and any attachments may contain confidential and privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify me immediately by replying to this message and deleting it from your computer. Thank you.

1

## OFFICE OF SPECIAL INVESTIGATIONS
## INVESTIGATIVE REPORT



**Department of Education**
*Dennis M. Walcott, Chancellor*

Courtenye Jackson-Chase
General Counsel

Candace R. McLaren
Director

Christopher J. Dalton
Deputy Director

Norris W. Knowles
Associate Director

**DATE:** August 14, 2012

**TO:** Candace R. McLaren
Director

**FROM:** Myriam M. Berardino for Anna Steel[1]
Confidential Investigator

**SUBJECT:** Rosemarie Richardson, File #621761[2]
Administrator, Committee on Preschool Special Education

OSI Case #11-9350

### ORIGIN OF COMPLAINT

On October 13, 2011, the Office of Special Investigations ("OSI") received a referral from the Special Commissioner of Investigation ("SCI") concerning the conduct of Rosemarie Richardson, Committee on Preschool Special Education ("CPSE").[3] Ms. Jan McDonald, Executive Director, Committee on Special Education, reported that, on June 28, 2011, Ms. Richardson had falsely documented that Mother A had participated, via teleconference, in the annual review of Student A's Individualized Education Program ("IEP")[4] held on the same date. Mr. McDonald further stated that his information was based on a complaint he received from Christopher Treiber, Director of Advocacy Services, AHRC New York City.[5]

---

[1] OSI Investigator Anna Steel is no longer employed with the Department of Education ("DOE").
[2] Rosemarie Richardson retired from the Department of Education on July 1, 2012.
[3] CPSE is responsible for servicing children ages 3-5 years old. Every school district has a CPSE that determines a child's special needs and services. "When a parent or teacher believes a child might benefit from special education, the district's committee plays an important role. It reviews referrals from parents and teachers, arranges for student evaluations, and reviews the results. In consultation with the student's parents, the committee makes recommendations about a student's need for special education and an individualized education program ("IEP"). In addition, the committee must review, at least annually, the student's IEP and arrange for a re-evaluation of the student at least once every three years." See http://nysut.org/specialed/print.html)
[4] An Individualized Education Program ("IEP") is a document that outlines a specific educational program for a student with a disability. (See http://schools.nyc.gov/Offices/District75/Departments/IEP/default.htm)
[5] AHRC New York City offers a wide range of programs, services and supports tailored to meet the specific needs of individuals with intellectual and developmental disabilities. (See http://www.ahrcnyc.org/aboutus/aboutus.html)

During the course of this investigation, it was discovered that the service provider had not been present during Student A's annual IEP review. According to Mr. Treiber, Ms. Richardson should not have changed Student A's IEP without the service provider, Functional Life Achievement, Inc., being present.

During the course of this investigation, it was discovered that Mother A and Ms. Diane Bissesar, Assistant Director, ▬▬▬▬▬▬▬▬▬Inc.,[6] had requested, via several letters to Ms. Richardson and to the "CPSE administrator," that Student A's IEP be re-evaluated.[7]  However, neither Ms. Richardson nor any other CPSE administrator responded to Ms. Bissesar or Mother A.  Mr. Treiber alleged that Ms. Richardson had violated Part 200 of New York State Regulations of the Commissioner of Education, Section 200.16, by failing to respond within a particular timeframe regarding Student A's IEP re-evaluation.

Additionally, during the course of this investigation, it was discovered that Ms. Richardson had violated Section 200.4(d)(4) of the New York State Regulations of the Commissioner of Education and Section 4410 of the New York State Education Law which states that, "To the extent possible, any meeting of the committee shall be held at a site and time mutually convenient to the members of the committee and the parent of the preschool students, including but not limited to the worksite of the evaluator, the municipal representative on the committee, or the chairperson of the committee." According to Mr. Treiber, Ms. Richardson was to have scheduled an appointment with Mother A, on a mutually agreeable date, for Student A's annual IEP review.

## BACKGROUND

On June 11, 2012, a search of the Department of Education's databases revealed that Rosemarie Richardson has not been the subject of any previously substantiated allegations.

On June 11, 2012, Technician Pribil, New York City Police Department's Bureau of Criminal Identification Unit, indicated that Rosemarie Richardson does not have a criminal history.

---

[6] ▬▬▬▬▬▬▬, Inc. offers "early intervention services to address the needs of infants and toddlers who have developmental delays or disabilities."
http://apidb.org/organizations/agencies/early_intervention_provider_agency_252y000000x/
[7] Mother A's letter, dated September 13, 2011, is contained within the investigative file.  Ms. Bissesar's letters to CPSE administrators dated November 23, 2010 and March 17, 2011, are contained within the investigative file.

OSI Case #11-9350

## RESULTS OF INVESTIGATION

In November 2011, Investigator Steel interviewed the following individuals, via telephone, regarding the events during the 2010-2011 school year:

### Jan McDonald, Executive Director, Committee on Special Education:

On November 4, 2011, Investigator Steel interviewed Ms. Jan McDonald, Executive Director, Committee on Special Education. She stated that, on or about October 7, 2011, Christopher Treiber, Director of Advocacy Services, AHRC New York City, informed her that Mother A had alleged that she had not participated in a telephonic conference call with Ms. Richardson regarding Student A's annual IEP review. Ms. McDonald explained that, on the form entitled "Authorization of the IEP – Change,"[8] Ms. Richardson had noted a "T" next to Mother A's signature. Ms. McDonald further explained that the "T" implied that Ms. Richardson had a telephonic conference call with Mother A and that she had signed the form on behalf of Mother A.

Ms. McDonald then called SCI to report Mr. Treiber's allegation against Ms. Richardson.

### Mother A:

On November 22, 2011, Investigator Steel interviewed Mother A. She stated that her 4-year-old son, Student A, attended the ████████████████████ r and his teachers recommended that he be evaluated for special education services. The ████████████████████ sent a referral to the CPSE, and Student A received an IEP detailing the services that he was to receive starting in September 2010. According to Mother A, by November 23, 2010, Student A's teachers recommended a re-evaluation of Student A's IEP because they believed that he needed additional services.

As a result, around November 2010, Mother A also requested that Student A be re-evaluated. However, according to Mother A, she never received a reply from the CPSE.

Mother A further stated that, in April 2011, after several attempts to reach CPSE administrator Lisa Saracuse,[9] via telephone, Ms. Saracuse informed her that she was no longer Student A's CPSE administrator, but the case had been assigned to Ms. Richardson. During that time, Mother A repeatedly called Ms. Richardson to request that Student A be re-evaluated. Ms. Richardson did not return any of her phone calls. According to Mother A, Student A's service provider, ████████████████████ Inc., had also sent two letters[10] to the CPSE requesting additional services for Student A.

On July 5, 2011, Mother A stated that she received a new copy of Student A's IEP from Ms. Richardson. Mother A insisted that she did not have a telephonic conversation

---

[8] Copy of the Authorization of the IEP – Change "is contained within the investigative file."

[9] Ms. Lisa Saracuse retired on November 1, 2011.

[10] The two letters sent to CPSE, dated November 23, 2010 and March 17, 2011, from ████████████████ Inc., are contained within the investigative file.

Chancellor's Office of Special Investigations
65 Court Street - Room 922 - Brooklyn, NY 11201
Telephone: 718 935 3800; Fax: 718 935 3931

-3-

with Ms. Richardson on June 28, 2011. In fact, Mother A insisted that she had just changed jobs at that time and could not have been reached by telephone. Furthermore, Mother A was adamant that she would never have agreed to keep the same IEP when she had been advocating for her ████ to receive additional services.

In September 2011, Mother A reported to Mr. Treiber that, during the 2010-2011 school year, the CPSE had neglected to re-evaluate Student A's IEP despite her insistence and that of the service providers.

## Christopher Treiber, Director of Advocacy Services, AHRC[11]:

On November 10, 2011, Investigator Steel interviewed Mr. Christopher Treiber, Director of Advocacy Services, AHRC New York City. He stated that, in September 2011, Mother A met with him to discuss her request, as well as that of the service provider, that Student A be re-evaluated in order to have his IEP include additional services.

Mr. Treiber stated that, under Section 200.16 of the New York State Regulations of the Commissioner of Education, and under Education Law, Article 89, subsection 4410, the CPSE should have responded to Mother A's request for evaluation within 90 days, but did not. Moreover, the CPSE had 30 days within which to contact Mother A and acknowledge the request for re-evaluation. Mr. Treiber stated that the CPSE "definitely violated those timelines." Furthermore, Mr. Treiber stated that another regulation dictates that "every effort" be made to convene an IEP meeting that the parent can attend. Lastly, Mr. Treiber explained that, in order to change a student's IEP, the student's parent and service provider must be present. However, neither Mother A, nor the service provider, Functional Life Achievement, Inc., was present at Student A's annual IEP review on June 28, 2011; instead, Ms. Richardson was the only person present.

## Lisa Saracuse, CPSE administrator:

On November 29, 2011, Investigator Steel requested that Ms. Saracuse be interviewed at OSI. On December 19, 2011, Mr. Robert Reich, Director, Council of School Supervisors & Administrators ("CSA") sent an email[12] to Investigator Steel stating that Ms. Lisa Saracuse, CPSE administrator, "has retired from the New York City Department of Education and does not wish to meet with your office."

## Gerard Donegan, Committee on Special Education, Chairperson:

On January 24, 2012, Investigator Steel interviewed Mr. Donegan, Committee on Special Education ("CSE"), Chairperson, at OSI, in the presence of Carol Atkins, CSA Representative. At that time, Mr. Donegan stated that he had no information about this particular case.

---

[11] Mr. Treiber is currently working as Associate Executive Director for Children's Services, Interagency Council of Developmental Disabilities Agencies, Inc.
[12] A copy of Mr. Reich's email, dated December 19, 2011, is contained within the investigative file.

Chancellor's Office of Special Investigations
65 Court Street · Room 922 · Brooklyn, NY 11201
Telephone: 718 935 3800; Fax: 718 935 3981

-4-

OSI Case #11-9350

He acknowledged that, if a parent requests that his or her child's IEP be re-evaluated, the CPSE administration has to approve or deny the request within 30 days. Once approved, the student would have to be re-evaluated and an IEP meeting would be held to determine what additional services would be recommended.

He also acknowledged that, during an annual IEP review, the CPSE administrator and the special education service provider must be present. A parent is advised, via letter, of the date of the annual IEP review. The parent has a choice to attend in person or be present during a telephonic conference call.

Mr. Donegan stated that, during the 2010-2011 school year, there was a lot of turnover in the CPSE office. He said that, at that time, Ms. Richardson was new to the job, the environment was chaotic, the caseload was high, and this case must have fallen through the cracks.[13]

### 48-Hour Notice:

On November 29, 2011, Investigator Steel notified Ms. Richardson that she was the subject of this investigation. After serving Ms. Richardson with a 48-Hour Notice, she was explicitly instructed not to discuss the details of this investigation with anyone at the location of the alleged incident other than her union representative.

### Rosemarie Richardson, CPSE administrator:

On December 16, 2011, Ms. Rosemarie Richardson, CPSE administrator, appeared at OSI and interviewed in the presence of Phyllis Williams, CSA Representative. At that time, Ms. Richardson stated that she began working at CPSE in December 2010.

When questioned, Ms. Richardson was very evasive and refused to explain her responsibilities and the referral process for preschool students. Furthermore, Ms. Richardson did not recall handling Student A's case, and said that she was not familiar with Student A or Mother A.

During the interview, Investigator Steel showed Ms. Richardson a copy of Student A's IEP, dated June 28, 2011, and entitled "Final Notice of Recommendation/Modification of IEP." Ms. Richardson acknowledged that she had filled it out and that it contained her signature, but could not recall any specifics, including the alleged teleconference call with Mother A.

When questioned about why Student A's service provider had not been present during that meeting, since the name and the signature of the service provider were left blank, Ms. Richardson stated that it is not unusual for a service provider to be absent during an IEP meeting.

---

[13] Investigator Steel's notes did not indicate whether these statements, or portions thereof, were direct quotes.

Ms. Richardson would neither confirm nor deny whether it was the policy to attempt to accommodate a parent to attend an IEP meeting in person, rather than a telephonic conference call. Additionally, she could not say whether she had documented any attempts to contact Mother A and/or the service provider before scheduling the June 29, 2011 IEP meeting.

Ms. Richardson was not able to articulate what occurs when a case is transferred from one CPSE administrator to another or what the responsibilities of the newly assigned CPSE administrator would be when a case is transferred. Ms. Richardson did not recall whether Ms. Saracuse was the first CPSE administrator assigned to Student A. Ms. Richardson did not recall receiving any cases from Ms. Saracuse.

Ms. Richardson acknowledged that, during the 2010-2011 school year, there was a "tremendous amount of turnover at her agency," including Ms. Saracuse retiring; as a result, things were "very chaotic."

Ms. Richardson denied receiving Mother A's letter addressed to her in September 2011, even after Investigator Steel showed her a copy of said letter.

Ms. Richardson denied that Mr. Donegan, her supervisor, had spoken to her about Mother A's complaint.

Ms. Richardson denied unilaterally changing Student A's IEP. Relying solely on the fact that her signature appeared on Student A's IEP, Ms. Richardson claimed that, although it was not necessary to have a service provider present, Mother A had been present via a teleconference call on June 28, 2011. Ms. Richardson maintained that she would not have indicated that a teleconference call had occurred with Mother A if it had not happened.

## CONCLUSION

The allegation that Rosemarie Richardson, CPSE Administrator, falsely documented that Mother A had participated, via teleconference, in the annual review of Student A's IEP on June 28, 2011 is substantiated.

The allegation that Rosemarie Richardson, CPSE Administrator, failed to contact Student A's service provider to schedule the IEP review and to ensure the service provider's presence during the annual IEP review on June 28, 2011 is substantiated.

The allegation that Rosemarie Richardson, CPSE Administrator, failed to contact Mother A to schedule the IEP review and to ensure that Mother A could attend the IEP review is substantiated.

The allegation that Rosemarie Richardson, CPSE Administrator failed to follow the timelines under Section 200.16 of the NYS Regulations and Section 4410 of Education Law Article 89 is substantiated.

Chancellor's Office of Special Investigations
65 Court Street - Room 922 - Brooklyn, NY 11201
Telephone: 718 935 3800; Fax: 718 935 3931

-6-

OSI Case #11-9350

The allegation that Rosemarie Richardson, CPSE Administrator, failed to respond to requests from Mother A and the service provider to change Student A's IEP is substantiated.

## RECOMMENDATION

It is the recommendation of this office that Rosemarie Richardson be placed on the Ineligible List and not be considered for future employment with the DOE.

SUBMITTED BY:

Myriam M. Berardino
Confidential Investigator

APPROVED BY:

Candace R. McLaren
Director

Chancellor's Office of Special Investigations
65 Court Street - Room 922 • Brooklyn, NY 11201
Telephone: 718 935 3600;  Fax: 7)8 935 3593

-7-

# Exhibit

## "4"

LAW OFFICES OF
# NEAL H. ROSENBERG

9 MURRAY STREET
SUITE 4 WEST
NEW YORK, NEW YORK 10007-2281

TELEPHONE:(212) 732-9450
TELECOPIER: (212) 571-9893
neal.rosenberg@nyedlaw.com

September 29, 2015

Mallory O. Sullivan
First Deputy Director, Office of Personnel Investigation
Division of Human Resources
New York City Department of Education
65 Court Street, Rm 200
Brooklyn, New York 11201

Dear Ms Sullivan:

In furtherance of our attempt to permit Ms. Richardson to be employed with either the Department of Education directly or a vendor to the Department of Education we submit her response to the allegations against her.

Please be reminded that she never saw the report dated August 14, 2012 until you kindly provided it to me.

I thank you for your cooperation in this matter.

Very truly yours,

Neal H. Rosenberg

cc: Rosemarie Richardson

Ms. Rosemarie Richardson
622 East 20th Street apt. 9B
New York, NY 10009
c. 646-369-4001
roerich7@aol.com

September 21, 2015

Law Offices of Neal H. Rosenberg
9 Murray Street
Suite 4 West
New York, NY 10007-2281
t. 212-732-9450
neal.rosenberg@nyedlaw.com

Dear Mr. Rosenberg:

This flawed investigation has destroyed my career in the New York City Department of
Education and resulted in significant financial losses and irreparable damage to my career
and reputation. The net result of this flawed investigation was to experience a harassed
and intimidating work environment. As a result, of these tactics I could not continue as a
Department of Education (DOE) employee.

The OSI August 14, 2012 letter of this investigation was lost by the DOE, and I had no
chance for review. Also, the investigator by asking detailed questions and denying me
access to the case, documents, CAP and timelines involved in the investigation never
allowed me to seek accurate answers or the truth. OSI's intention was only to liable me.
As further proof of their refusal to cooperate with their own investigation was their sole
reliance on third party gossip rather than doing true investigative work such as checking
DOE phone records on June 28, 2011 to correctly determine if in fact there was a DOE
phone conference between myself and said Mother A, or if the parent was lying. The
failure of OSI to do this taints their "investigation."

I will now cite the specific concerns over this flawed investigation:

In reference to the Division of Human Resources, Office of Personnel Investigation, OSI
report dated July 28, 2015 found that my security clearance is denied due to my adverse
employment history with the New York City Department of Education (DOE). While
employed as an Educational Administrator for the DOE, I was the subject of an OSI
investigation on December 16, 2011. This report found that in my position as a
Committee on Preschool Special Education (CPSE) Administrator, I failed to follow the
timelines under Section 200.16 of the NYS Regulations and Section 4410 of Education
Law Article 89, I failed to respond to the request of both a parent and service provider to
change a student's Individualized Education Plan (IEP), I failed to contact said student's

Case 1:16-cv-01364-JPO   Document 17-1   Filed 05/24/16   Page 32 of 45
Case 1:16-c    )1364   Document 1-4   Filed 02/22/1    Page 3 of 8

2

mother and service provider to review and ensure that they could be in attendance during an IEP review, and I falsely documented that said mother had participated, via teleconference, in the annual review of her child's IEP and never had the telephone conference at CSE on June 28, 2011." Why has OSI never established a timeline for the case as a whole nor does it share timelines unique to CPSE Administrator Lisa Saracuse or myself? The complaint and investigation hinges on one case, and one meeting that is blatantly biased and without proof assumes that Mother A and Christopher Treiber, Director of AHRC are correct without corroborating documentation.

In response to both the OSI letter dated July 28, 2015 and the OSI letter dated August 14, 2012 (of which I was never mailed a copy, nor was it placed in my personnel files or archived files but only secured through the Law Offices of Neal Rosenberg by email on September 5, 2015) from Division of Human Resources, Office of Personnel Investigation is the following:

How could I have failed to follow the timelines when the case was originally opened with another CPSE Administrator that I was never made aware of and the timelines referenced in the letter dated August 14, 2012 is murky? If I were to prepare for an Impartial Hearing I would make certain that I knew the exact timelines and not cite "around September 2011" as a hard date. This vague and uncertain language could not be defended at an Impartial Hearing yet it was used to destroy my career!

How could I have failed to respond to the request of said Mother and service provider to change a student's IEP when in fact an AR2P recommendation by definition is a change to the IEP?

How could I have failed to contact Mother to ensure her attendance during an IEP review when I had to have a prior conversation with said Mother to obtain a phone number to hold the meeting at a specific date, time and room with DOE telephone access at the CPSE office before the meeting commenced on June 28, 2011?

How could I have falsely documented that said Mother had participated, via teleconference? OSI has alleged fraud to my reputation. An OSI allegation stated I unilaterally had a meeting with myself and falsified the IEP document. OSI has failed to investigate this allegation with no apparent investigation of the DOE telephone recordings made on June 28, 2011 from a DOE telephone I conducted at CPSE with said Mother. Why did OSI suppress it's own investigation by not checking phone records? Incidentally, Mother A was urgent to have the meeting as soon as possible and agreed prior to have the meeting on the phone with a T for parent signature due to her busy schedule as a doctor with a new position.

The OSI August 14, 2012 letter written by Ms. Berardino stated, "Mother insisted that she did not have a telephone conversation with Ms. Richardson on June 28, 2011. In fact, Mother A insisted that she had just changed jobs at that time and could not have been reached by telephone. Furthermore, Mother A was adamant that she would never have agreed to keep the same IEP when she had been advocating for her son to receive

Case 1:16-cv-01364-JPO  Document 17-1  Filed 05/24/16  Page 33 of 45
Case 1:16-cv-01364  Document 1-4  Filed 02/22/16  Page 4 of 8

3

additional services." I absolutely had to have had her telephone number to reach said Mother to schedule and conduct the meeting on June 28, 2011 by DOE telephone at CPSE as requested by Mother which was to change agencies not increase her child's services on June 28, 2011. Incidentally, an AR 2P is by definition a change to the IEP, therefore Mother A never kept the same IEP.

In the OSI August 14, 2012 letter, Ms. Berardino wrote, As a result, "around November 2010," Mother A also requested that Student A be re-evaluated. However, according to Mother A, she never received a reply from the CPSE." It should be noted (incorrectly and in contradiction to the CPSE SOPM) OSI called this an annual review rather than a requested review. OSI should have understood that the parent had an existing IEP and was seeking a modification to the existing IEP. Consistent with the CPSE SOPM this is referred to as a requested review. Regrettably OSI confused an annual review with a requested review (inconsistent with CPSE SOPM). What letter "around November" 2010? What date was it written? What date was it received by the CPSE? Why is the OSI timeline so blurry? In the OSI August 14, 2015 letter, on page 3 is not "around November" rather vague for a timeline OSI is accusing me of being out of compliance? When in November? Was it November 1st or perhaps November 30th?

In the OSI August 14, 2012 letter, Ms. Berardino wrote, "Mother A further stated that, in April 2011, after several attempts to reach CPSE Administrator Lisa Saracuse via telephone, Ms. Saracuse informed her that she was no longer Student A's CPSE Administrator, but the case had been assigned to Ms. Richardson. Ms. Richardson did not return any of her phone calls." What date and what time is OSI citing? Apparently OSI did not consider that the case was shared between two Administrators and failed to determine the date the case was transferred. Mother A stated I could not return any of her phone calls because she had just changed jobs at the time and could not have been reached by telephone. Did Mother A not have a home or cell phone? If I couldn't reach her by telephone how could I have scheduled a meeting she alleged I never had? Again OSI could never determine if the parent was telling the truth because they refused to check the DOE phone records on June 28, 2011. The bias of OSI to blatantly accept the Mother's word and suppress its own investigation suggests a conflict of interest and very questionable practices.

How could I answer questions at the OSI hearing conducted on December 16, 2011 by investigator Steel, when not only did I not have access to the official DOE file on said student and I was never informed what the meeting was about or who was in question until I arrived that day with CSA representative Phyllis Williams? I was told by investigator Steel to answer detailed questions based on no information whatsoever I had for a meeting that occurred seven months prior. OSI asked me to answer detailed questions about the steps leading to an IEP meeting and possible IEP participants based on a complex sequence of events (timelines) between two different CPSE Administrators, Lisa Saracuse and myself. OSI refused to cooperate in their own investigation by denying me the opportunity to have the official student records, documents, CAP access and timelines of events that allegedly occurred between two different CPSE Administrators. Did OSI seek factual answers to their own investigation?

Furthermore, the July 28, 2015 OSI report stated, "You were given the opportunity to review the above information with the Office of Personnel Investigation and to provide information in support of your application during your review, conducted on 7/20/2015." This is a blatant falsehood and should be investigated. I was never given an opportunity to review the above information (What Information) with Office of Personnel Investigation nor any information in support (What Information in Support) of my application (What application) during my interview, conducted on 7/20/2015. I was never even in possession of the August 14, 2012 letter from OSI written over three years earlier nor told why I was "InEligible" status or given a reason for my required appearance to OSI on July 20, 2015.

In the OSI letter dated August 14, 2012, Ms. Berardino wrote "In September 2011, Mother A reported to Mr. Christopher Treiber, Director of Advocacy Services, AHRC New York City that, during the 2010-2011 school year, the CPSE had neglected to re-evaluate Student A's IEP despite her insistence and that of the service providers." Did OSI not realize that students are evaluated not IEP's? Who has the due process right the student or the IEP? Was Lisa Saracuse assigned Administrator at that point? What letters were filed for a re-evaluation? The meeting I held with said Mother on June 28, 2011 three months earlier was a requested review by Mother to change agencies, there was no mention or letter addressed to me I had in my possession requesting a re-evaluation and additional services. Where were the teacher and service providers' justification letters for additional services? What dates were these letters? If in fact there were letters, were they certified, return receipt requested?

In the OSI letter dated August 14, 2012 Ms. Berardino wrote, "Mr. Treiber stated that, under Section 200.16 of the New York State Regulations of the Commissioner of Education, and under Education Law, Article 89, subsection 4410, the CPSE should have responded to Mother A's request for evaluation within 90 days, but did not. Moreover, the CPSE had 30 days within which to contact Mother A and acknowledge the request for re-evaluation." Did Mr. Treiber want to attend as a mandated participant? Is he a clinician or teacher? Where is his letter requesting participation? In what capacity was he a mandated participant to the IEP consistent with the practices set forth in the CPSE SOPM? Did the said Mother or Mr. Treiber file an EV-1P on Preschool Letterhead or was a C-2P letter ever generated? Furthermore, has OSI suggested I violated LRE PL 94.142 by faulting me for not arranging for unnecessary testing? Why would progress reports by current providers not be relevant by the CPSE? Administrator Lisa Saracuse conducted the initial evaluation on said student. What were the dates of the initial testing evaluations and the date of the initial IEP meeting? Why was the timeline so blurred in the OSI investigations?

In the OSI letter dated August 14, 2012 Ms. Berardino wrote, "Lastly, Mr. Treiber explained that, in order to change a student's IEP, the student's parent and service provider must be present. However, neither Mother A, nor the service provider, Functional Life Achievement, Inc., was present at Student A's annual IEP review on June 28, 2011; instead, Ms. Richardson was the only person present." This was a blatant and

5

false allegation. This was not an annual review meeting but a requested review by the Mother to change service provider agencies and said Mother was on the telephone with me. I believe said Mother and Mr. Treiber are confusing the reconvene meeting with an annual review. OSI took Mr. Treiber's word that the service provider must be physically present to make the IEP amendment valid. In fact based on the actual parental request at a live meeting we were able to correctly amend the IEP.

In the OSI August 14, 2012 letter Ms. Berardino wrote, "In January 24, 2012, investigator Steel interviewed Mr. Donegan, Committee on Special Education ("CPSE"), Chairperson, at OSI, in the presence of Carol Atkins, CSA Representative. At the time, Mr. Donegan stated that he had no information about this particular case. In the OSI August 14, 2012 letter on page 4 Ms. Bernardino wrote, "At that time, Mr. Donegan stated that he had no information about this particular case." Yet in the same OSI letter on page 6 Ms. Berardino wrote "Ms. Richardson denied that Mr. Donegan, her supervisor, had spoken to her about Mother A's complaint." This is a false allegation and contradiction in accusations to my credibility and professionalism by Ms. Berardino. How could Mr. Donegan have spoken to me about this case when he in fact knew nothing about it himself? This is another example of OSI's false and outrageous allegations.

In the same letter, Ms. Berardino wrote, "Mr. Donegan stated that, during the 2010-2011 school year, there was a lot of turnover in the CPSE office. He said that, at the time, Ms. Richardson was new to the job, the environment was chaotic, the caseload was high, and this case must have fallen through the cracks." See footnote 13 "Investigator Steel's notes did not indicate whether these statements, or portions thereof, were direct quotes." Nevertheless, the statements written by Ms. Berardino, who replaced investigator Steel, were Mr. Donegan's absolute answers.

In the OSI August 14, 2012 letter Ms. Berardino wrote, "When questioned, Ms. Richardson was very evasive and refused to explain her responsibilities and the referral process for preschool students. Furthermore, Ms. Richardson did not recall handling Student A's case, and said that she was not familiar with Student A or Mother A." OSI is contradicting itself because they denied me the ability to answer their questions in detail. This was one of a thousand cases handled seven months prior to the OSI investigation of December 16, 2011. How could I possibly remember specific details for every case I handled?

In the OSI letter dated August 14, 2012 Ms. Berardino wrote, "During the interview, investigator Steel showed Ms. Richardson a copy of Student A's IEP, dated June 28, 2011, and entitled "Final Notice of Recommendation/Modification of IEP. Ms. Richardson acknowledged that she had filled it out and that it contained her signature, but could not recall any specifics, including the alleged teleconference call with Mother A." This is an outrageous allegation. I did in fact acknowledge my signature line and explained the T was for telephone conference with said Mother conducted over the phone who in fact gave me permission to sign with a T prior to the meeting. I never said I could not recall any specifics, including the alleged teleconference call with Mother A. If my signature was there and there was a T for teleconference call I conducted the call with

6

Mother A's permission to sign a T for a DOE telephone conference at CPSE on June 28, 2011. Why didn't OPI investigate the DOE telephone records on June 28, 2011?

In the OSI letter dated August 14, 2012 Ms. Berardino wrote, "When questioned about why Student A's service provider had not been present during that meeting since the name and the signature of the service provider were left blank, Ms. Richardson stated that it is not unusual for a service provider to be absent during an IEP meeting." This is a false and unfounded allegation. I never would have made such an outrageous and erroneous statement. If a requested meeting by a Mother was to change agencies it could be conducted over the phone and a service provider could be present or reached by phone, but not mandatory. If it were an annual review (which it was not) of course service providers would be present for the meeting as stated in the CPSE SOPM.

In the OSI letter dated August 14, 2012 Ms. Berardino wrote, "Ms. Richardson would neither confirm nor deny whether it was the policy to attempt to accommodate a parent to attend an IEP meeting in person, rather than a telephonic conference call. Additionally, she could not say whether she had documented any attempts to contact Mother A and/or the service provider before scheduling the June 29, 2011 IEP meeting." OSI is incorrect when they refer to the IEP meeting being held on June 29, 2011. The meeting was held on June 28, 2011. This is an outrageous allegation. It has always been the policy to attempt to accommodate a parent to attend an IEP meeting in person, rather than a telephonic conference call. Of course I contacted Mother A. How else would I have held a DOE telephone conference on June 28, 2011 at CPSE with said Mother on the telephone? Once again why didn't OSI check the DOE phone records?

In the OSI letter dated August 14, 2012, Ms. Berardino wrote, "Ms. Richardson was not able to articulate what occurs when a case is transferred from one CPSE administrator to another or what the responsibilities of the newly assigned CPSE administrator would be when a case is transferred. Ms. Richardson did not recall whether Ms. Saracuse was the first CPSE administrator assigned to Student A. Ms. Richardson did not recall receiving any cases from Ms. Saracuse." In fact, I did state that CPSE Administrator Lisa Saracuse handled student A's initial CPSE case and that I did not provide the initial services, she did. My CPSE Administrative responsibility requested by said Mother was to reconvene to have the agency changed. Nothing more. I do emphatically recall not receiving this case from CPSE Administrator Lisa Saracuse. What was CPSE Administrator Lisa Saracuse's timeline in this case?

How could I have an adverse employment history with the DOE? My career began working at 65 Court Street, Human Resources with Supervisor, Alice Stasinski. I worked as a Special Education Teacher, Supervisor of Special Education, Instructional Support Specialist, Assistant Principal I.A., CSE Teacher Assigned and CPSE Administrator from 1971 to 2012. I never had a blemish to my career and reputation and I received only "S" ratings during the 30 plus years in service with the DOE.

7

In conclusion the OSI Report Case No. 11-9350 dated July 28, 2015 and the OSI August 14, 2012 letter are alleged, unsubstantiated, flawed and open for legal action.

Sincerely,

Rosemarie Richardson

# Exhibit

## "5"

Department of
Education
Carmen Farīna, Chancellor

October 20, 2015

Rosemarie Richardson
622 East 20th St., Apt 9B
New York, NY 10009

License/Title/Position: Special Education Supervisor/Teacher/Manual Therapy Center/ DOE Vendor
Applicant ID#: 0303676
PRP #: 128,638

Dear Ms. Richardson:

I have reviewed your September 21, 2015 request for reconsideration, received by this office September 30, 2015, regarding the denial of your applicant for security clearance due to adverse employment history with the NYC DOE, and specifically a substantiated report from the Office of Special Investigations.  I have also reviewed your entire file in considering your request.

After due consideration and review of your case, I am affirming the original findings of your denial.  You may reapply for security clearance no earlier than twelve (12) months from the date of the original decision, that being July 28, 2015, and upon receiving a valid job offer.

Sincerely,

Katherine G. Rodi
Director, Office of Employee Relations
Division of Human Resources (DHR)

Cc:
Neal H. Rosenberg, attorney for Ms. Richardson
file

# Exhibit

# "6"

IN THE MATTER OF THE CLAIM OF
ROSEMARIE RICHARDSON

-against-

THE NEW YORK CITY DEPARTMENT OF EDUCATION, THE NEW YORK CITY
BOARD OF EDUCATION AND THE CITY OF NEW YORK

TO:   THE BOARD OF EDUCATION OF THE CITY OF NEW YORK AND/OR
      THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK
      52 Chambers Street, Room 320, B4
      New York, New York 10007

      OFFICE OF THE COMPTROLLER OF THE CITY OF NEW YORK
      One Center Street
      New York, New York 10007

      THE CORPORATION COUNSEL OF THE CITY OF NEW YORK
      100 Church Street, 5th Floor
      New York, New York 10007

      **TAKE NOTICE** that the undersigned claimant hereby makes claim and demand against
you as follows:

      1.  The name and post office address of the claimant and her attorney is:

          a.  Rosemaire Richardson
              622 East 20th Street, #9B
              New York, NY 10009

              Itkowitz PLLC
              Att. Jay B. Itkowitz
              26 Broadway, 21st Floor
              New York, NY 10004
              646 822 1801
              jitkowitz@itkowitz.com

      2.  The nature of the claim: THE BOARD OF EDUCATION OF THE CITY OF
NEW YORK AND/OR THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW
YORK ("DOE") deprived Ms. Richardson of her constitutional rights pursuant to the 14th
Amendment of the United States Constitution and her statutory rights pursuant to the New York
State Education Law § 3020-a by subjecting Ms. Richardson to disciplinary proceedings and
placing Ms. Richardson on an "ineligible list" thereby stigmatizing her and damaging her liberty

and property interests all without the benefit of a hearing as required by the United States Constitution and the New York State Education Law.

       3. On October 13, 2011, the Office of Special Investigations ("OSI") received a referral from the Special Commissioner of Investigation ("SCI") claiming Ms. Richardson, a supervisory employee with tenure, had "falsely documented" that a mother had participated in a telephone conference with the respect to a student's Individualized Education Program ("IEP"). On November 29, 2011, an OSI investigator notified Ms. Richardson that she was the subject of an investigation without giving any details of the allegations. Subsequently, the OSI investigator conducted an "interview" with Ms. Richardson on December 16, 2011. Ms. Richardson denied the allegations and was not permitted access to her records at the time and the investigator did not at any time check the telephone records maintained by the Department of Education with respect to telephone conferences in an effort to document the phone call that the parent claimed did not occur. To Ms. Richardson's knowledge, nothing ever occurred after the interview on December 16, 2011. Ms. Richardson retired in or about June or July of 2011. Unbeknownst to Ms. Richardson, OSI continued to process the complaint without notice of any kind to Ms. Richardson by decision dated August 14, 2012 in OSI Case #11-9350, "substantiated" that Ms. Richardson had purportedly "falsely documented" that the subject parent had participated in a telephone conference on June 28, 2011, failed to contact the student's service provider to schedule the IEP conference, failed to contact the mother of the student to schedule the IEP conference and failed to follow various "timelines" imposed by the NYS regulations and the Education Law. Ms. Richardson did not find out about this administrative action until July 20, 2015. The circumstances by which she discovered this action occurred when she applied for a position with Manual Therapy Center, Inc. on April 23, 2015. As part of the vetting process, her name was submitted for vetting for security clearance with the DOE. Her application for security was denied and it was not until July 20, 2015 that she learned of some unspecified action by the DOE had resulted in her being placed on an "Ineligible List." In further investigating the circumstances of this event, she checked her file with DOE and discovered that no record of such action was contained in her personnel files. It took a letter from her prior counsel, Neal Rosenberg, dated August 12, 2015 to dislodge the offending letter documenting the administrative action from DOE which he received on or about September 9, 2015 in which he received the determination via email from Mallory Sullivan. Subsequently, Mr. Rosenberg requested that Ms. Sullivan reconsider the determination in issue via letter dated September 29, 2015. By letter dated October 20, 2015, Katherine G. Rodi, Director of the Office of Employee Relations for the DOE, "affirmed" the original findings in the determination dated August 14, 2012. The foregoing actions by the OSI, the DOE, the Board of Education and the City of New York, deprived Ms. Richardson of her constitutional and statutory rights to due process and to defend the allegations before an impartial court and/or hearing officer and the right to confront those who accused her of the charges which were substantiated.

       4. The items of damages claimed are as follows: The placement of Ms. Richardson on the Ineligible List without due process has damaged her by costing her a position with Manual Therapy Center, Inc. as well as damage to her reputation and standing in the educational community together with associated emotional distress.

The undersigned claimant therefore presents this claim for adjustment and payment. You are hereby notified that unless it is adjusted and paid within the time provided by law from the date of presentation to you, the claimant intends to commence an action on this claim.

Dated:      January 11, 2016
            New York, New York

**ROSEMARIE RICHARDSON**

ITKOWITZ PLLC
*Attorneys for Claimant*

By:

Jay B. Itkowitz, Esq.
26 Broadway, 21st Floor
New York. New York 10004
(646) 822-1801
jitkowitz@itkowitz.com

STATE OF NEW YORK          )
                           ) SS.:
COUNTY OF NEW YORK         )

The undersigned being duly sworn, deposes and says that deponent is the claimant in the within action; that she has read the foregoing Notice of Claim and knows the contents thereof; that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters deponent believes it to be true.

**ROSEMARIE RICHARDSON**

Sworn to before me
This 11th day of January, 2016

NOTARY PUBLIC

Notary Public State of New York
JAY B. ITKOWITZ
No. 24-5010324
Qualified in Kings County
Commission Expires March 29, 20

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK        )
                         )  ss.
COUNTY OF NEW YORK       )

The undersigned, being duly sworn, says:

I am not a party to this action, am over 18 years of age and am employed at Itkowitz PLLC, 26 Broadway, 21st Floor, New York, New York 10004.

On the 11th Day of January 2016 at 3.20 p.m. I personally served one (1) copy of the annexed Notice of Claim (hereinafter referred to collectively as "the papers") on the Office of the Comptroller of the City of New York at the address below. A proof of such delivery is attached hereto.

The address referred to above is as follows:

TO:   **OFFICE OF THE COMPTROLLER OF THE CITY OF NEW YORK**
      One Center Street
      New York, New York 10007

                                              _____
                                              SERGEY MARTS

Sworn to before me this
11th Day of January 2016

NOTARY PUBLIC

ALLEN KOHN
Notary Public, State of New York
No. 02KO6331110
Qualified in Kings County
Commission Expires September 28, 2019

1

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK      )
             )   ss.
COUNTY OF NEW YORK    )

     The undersigned, being duly sworn, says:

     I am not a party to this action, am over 18 years of age and am employed at Itkowitz PLLC, 26 Broadway, 21st Floor, New York, New York 10004.

     On the 11th Day of January 2016 at 3:28 p.m., I personally served two (2) copies of the annexed Notice of Claim (hereinafter referred to collectively as "the papers") on the Board of Education of the City Of New York and/or the Department of Education of the City of New York and the Corporation Counsel of the City of New York. A proof of such service is attached hereto.

     The address referred to above is as follows:

TO:   **THE BOARD OF EDUCATION OF THE CITY OF NEW YORK AND/OR THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK**
    52 Chambers Street, Room 320, B4
    New York, New York 10007

    **THE CORPORATION COUNSEL OF THE CITY OF NEW YORK**
    100 Church Street, 5th Floor
    New York, New York 10007

                  _____
                     SAM SMOUHA

Sworn to before me this
12th Day of January 2016

_____
NOTARY PUBLIC