61172

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

ROSEMARIE RICHARDSON,

                                  Index No.  16-CV-01364 (JPO)

                 Plaintiff,

         -against-

CARMEN FARINA, KATHERINE G. RODI,
CANDACE R. MCLAREN, MIRIAM M.
BERARDINO, ANNA STEEL, THE NEW YORK
CITY DEPARTMENT OF EDUCTION, THE NEW
YORK CITY BOARD OF EDUCATION AND THE
CITY OF NEW YORK,

                 Defendants.

----------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

Jay B. Itkowitz (JBI-5349)
ITKOWITZ PLLC
26 Broadway, 21st Floor
New York, New York 10004
(646) 822-1801
jitkowitz@itkowitz.com

*Attorneys for Plaintiff*

Dated: New York, New York
       June 9, 2016

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................ii

TABLE OF AUTHORITIES ..........................................................................................iii

PRELIMINARY STATEMENT .....................................................................................1

THE FACTS ..................................................................................................................3

STANDARD OF REVIEW .............................................................................................9

ARGUMENT .................................................................................................................9

     POINT I ...............................................................................................................9

           DEFENDANTS PLACED RICHARDSON, A THIRTY YEAR
           TENURED ADMINISTRATOR, ON AN 'INELIGIBLE LIST'
           *AND* DENIED HER A SECURITY CLEARANCE THEREBY
           PRECLUDING HER FROM EMPLOYMENT WITH A DOE
           CONTRACTOR. IN DOING SO, DEFENDANTS VIOLATED
           RICHARDSON'S RIGHT TO DUE PROCESS BECAUSE SUCH
           ACTION WAS DONE WITHOUT PROVIDING RICHARDSON
           WITH NOTICE OF ANY DISCIPLINARY CHARGES AND AN
           OPPORTUNITY TO BE HEARD..........................................................9

     POINT II .............................................................................................................14

           THIS COURT SHOULD ACCEPT SUPPLEMENTAL
           JURISDICTION OVER RICHARDSON'S STATE CLAIMS
           BECAUSE THEY FORM PART OF THE SAME CASE
           AND/OR CONTROVERSY...................................................................14

CONCLUSION..............................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abelli v. Ansonia Bd. Of Educ.*, 987 FSupp2d 170 (DConn 2013)..................................... 13

*Behrend v. Klein*, 2006 WL 2729257 (EDNY 2006)...................................................... 10

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).......................................................................................... 9

*Blythe v. City of New York,* 963 FSupp2d 158 (EDNY 2013) ...................................... 12

*Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343 (1988) ............................................... 14

*Cleveland Bd. of Educ. v. Loudermill*, 470 US 532 (1985) ........................................... 9

Cleveland v. Caplaw Enters.,
    448 F.3d 518 (2d Cir.2006) ............................................................................... 9

*Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F3d 623 (2d Cir 1996) ......... 12

*Duchemin v. Inc. Vill. of E. Hampton*, No. 14-CV-5976 ADS SIL, 2015 WL
    6680238, at *10-11 (E.D.N.Y. Oct. 31, 2015)................................................... 13

*Dunn v. New York City Dep't of Educ.*, 32 Misc 3d 1230(A) (NY Co Sup Ct 2011)................. 11

*Finley v Giacobbe*, 79 F3d 1285, 1288 (2d Cir 1996) ................................................. 10

*Guttilla v. City of New York,* No. 14-CV-156, 2015 WL 437405, at *7 (JPO) ........... 12

*J.S. v. T'Kach*, 714 F3d 99, 105 (2d Cir 2013) ........................................................... 10

*Leonardi v. Bd. of Fire Comm'rs of Mastic Beach Fire Dist.*, 643 FSupp  610, 613
    (EDNY 1986)..................................................................................................... 10

*Locurto v. Safir*, 264 F3d 154, 171 (2d Cir.2001) ...................................................... 9

*Louis v. New York City Hous. Auth.*, No. 15 CV 3122 (NRB), 2016 WL 297563,
    at *11 (S.D.N.Y. Jan. 14, 2016),...................................................................... 14

*Otero v. Bridgeport Housing Auth.*, 297 F3d 142, 151 (2d Cir 2002)........................ 10

*Reed v. Medford Fire Dep't, Inc.,* 806 F. Supp. 2d 594, 610 (EDNY 2011) .............. 11

*Storman v. Klein*, 09–CV–0338, 2009 U.S. Dist. LEXIS 34628, at *54–*55, 2009
    WL 1035964 (S.D.N.Y. Apr. 20, 2009) ............................................................ 12

*Todaro v. Norat*, 112 F3d 598 (2d Cir 1997) .................................................................. 10

*Trachtenberg v. Dep't of Educ. of City of New York*, 937 F. Supp. 2d 460, 470
(SDNY 2013) .................................................................................................................. 11

*Vaccaro v. Bd. of Educ. of City Sch. Dist. of City of New York*, 39 Misc. 3d
1241(A), 975 N.Y.S.2d 370 (Sup. Ct. 2013), *rev'd on other grds*, No.
104435/12, 2016 WL 3006046 (1st Dep't AD May 26, 2016) ................................. 11

**Statutes**

42 USC § 1983 .......................................................................................................................... 1

CPLR § 217 ............................................................................................................................... 9

CPLR Article 78 ....................................................................................................................... 2

New York Education Law § 3020-a ............................................................................. 1, 2, 11, 14

61172

## PRELIMINARY STATEMENT

On February 22, 2016, Plaintiff Rosemarie Richardson ("Richardson"), a 30-year tenured administrator with an unblemished record,  commenced this action against Defendants Carmen Farina ('Farina"), Katherine G. Rodi ("Rodi"), Candace R. McClaren ("McClaren"), Miriam M. Bernadino ("Bernadino"), Anna  Steel ("Steel"), The New York City Department of Education ("DOE"), The New York City Board of Education ("BOE") and The City of New York[1]  ("the City") (collectively "Defendants") stating claims the Defendants denied Richardson due process by placing her on "ineligible list" precluding her employment by DOE and its contractors,  after her retirement, without notice and an opportunity to be heard.  Richardson claims that such actions,

 (i) violated her constitutional right to due process giving rise to a 42 USC § 1983 claim,

 (ii) violated New York Education Law § 3020-a which entitles tenured professionals to a hearing before a single hearing officer,

 (iii) violated Education Law § 3020-a(5) which requires notice of a hearing officer's decision after which an employee may make an application to the New York Supreme Court, and,

 (iv) violated New York's Civil Practice Law and Rules ("CPLR") § 7803(3) in that the placement of Richardson on an "ineligible list" without due process was arbitrary and capricious, constituted an error in law and procedure and/or constituted an abuse of discretion.

---

[1] In its motion, Defendants assert that the City of New York should be dismissed as a defendant because it is separate and apart from the DOE and BOE. Richardson agrees and therefore consents to the dismissal of the City as a defendant in this matter.

In response, on May 19, 2016, Defendants[2] filed a Motion to Dismiss the Complaint [Doc. 13] claiming that by virtue of her resignation Richardson "deprived" the Defendants of an "opportunity to comply with procedural obligations" and foreclosed her from bringing a constitutional claim though no charges were filed against her and she was never provided with an opportunity to be heard before she was ***secretly*** put on an "ineligible list". It is uncontested that she never received notice of being placed on such a list until July 2015 when she was denied "security clearance" for a job with an independent contractor doing business with DOE.  Defendants further claim that this Court should not adjudicate her supplemental state claims that as a tenured administrator she was entitled to a hearing pursuant to New York State Education Law § 3020-a and that that the placement of her name on the "ineligible list" was a violation of law and procedure, constituted an abuse of discretion and was otherwise arbitrary and capricious, all in violation of CPLR Article 78.  Richardson respectfully submits this Memorandum in Opposition to Defendants' Motion to Dismiss. As is fully explained below, Richardson submits that her constitutional right to due process has been violated and that her property and liberty interests were compromised by the Defendants in violation of her state and constitutional rights. Moreover, Richardson submits that her state claims merit the exercise of supplemental jurisdiction by this Court.

---

[2] Defendants claim to be answering only for DOE, the BOE and the City because the individual defendants were not served. Actually, Defendant Farina was served by delivery of the summons to the Corporation Counsel office and such papers were accepted on her behalf.  *See* Exhibit "1" to Declaration of Allen Kohn dated June 9, 2016 ("Kohn Declaration").  Additionally, copies of the summons and complaint were served by mail with a waiver of service on Rodi, Berardino. Plaintiff's counsel also requested the last known addresses of Steel and McLaren but there has thus far been no response. In any event, the appearance of the individual defendants who have not joined in the motion by Defendants DOE, BOE and the City is of little consequence during the pendency of the instant motion.

## THE FACTS

Prior to her retirement in July 2012, Richardson was a tenured administrator in the New York City public school system with over 30 years of experience. On or about October 13, 2011, the Office of Special Investigations ("OSI") received a referral from the Special Commissioner of Investigation ("SCI") claiming Richardson, a supervisory employee with tenure, had "falsely documented" that a mother had participated in a telephone conference with the respect to a pre-school's student's Individualized Education Program ("IEP").  Complaint at ¶ 19. [ECF Doc 1]. On or about November 29, 2011, upon information and belief, Defendant Steel, the OSI investigator, notified Richardson that she was the subject of an unspecified investigation. *Id.* at ¶ 20.  Richardson was not given any details of the allegations which had been purportedly asserted against her. *Id.* at ¶ 21. Subsequently, Steel, conducted an "interview" with Richardson on or about December 16, 2011. *Id.* at ¶ 22. During the "interview" for the first time, Richardson was advised that a parent had asserted that Richardson had "falsely documented" that the parent had participated in a telephone conference on June 28, 2011 with the respect to the parent's child's IEP and had failed to contact the student's service provider to schedule the IEP conference, failed to contact the mother of the student to schedule the IEP conference and failed to follow various "timelines" imposed by the NYS regulations and the Education Law. *Id.* at ¶¶ 23, 24. Prior to the "interview", at no time was Richardson given any notice whatsoever of any specific complaints about her performance, let alone an opportunity to prepare a defense. *Id.* at ¶ 25. At the "interview", Richardson denied the allegation that she "falsely documented" that the parent had participated in a telephone conference on June 28, 2011 with the respect to the parent's child's IEP, denied that she had failed to contact the student's service provider to schedule the IEP conference, denied that she failed to contact the mother of the student to schedule the IEP

3

conference and denied she failed to follow various "timelines" imposed by the NYS regulations and the Education Law. *Id. at* ¶¶ 26, 27. At the "interview", Richardson was not permitted access to her files and/or the subject file on the student. *Id.* at 28.  At no time prior to and/or after the "interview" was Richardson given access to telephone records maintained by DOE in the regular course of business with respect to IEP proceedings. *Id.* at ¶ 29.  To Richardson's knowledge, no further action occurred after the "interview" on December 16, 2011.  *Id.* at ¶ 30.  Richardson retired in July of 2012. *Id.* at ¶ 31.

Unbeknownst to Richardson, OSI continued to process the complaint . *Id.* at ¶ 32. ***At no time was Richardson given any written notice of any specific allegations and/or charges let alone an opportunity to contest the same. Id.* at ¶ 33.** On or about August 14, 2012 in OSI Case #11-935,  Defendant Bernadino recommended that the allegations be  "substantiated", that Richardson had purportedly "falsely documented" that the subject parent had participated in a telephone conference on June 28, 2011, failed to contact the student's service provider to schedule the IEP conference, failed to contact the mother of the student to schedule the IEP conference and failed to follow various "timelines" imposed by the NYS regulations and the Education Law. *Id.* at ¶ 34. On or about August 14, 2012, Defendant Bernadino recommended that Richardson "be placed on the Ineligible List and not be considered for future employment with the DOE". *Id.* at 35. The recommendation by Defendant Bernadino was "approved" by Defendant McLaren. *Id.* at ¶ 36.  At no time did Defendants Bernadino and/or McLaren and/or the BOE and/or the DOE provide Richardson with any notice that any charges had been filed against her and that any allegations had been "substantiated" and/or "approved". *Id.* at ¶ 37.  At no time did Defendants Bernadino and/or McLaren and/or BOE and/or the DOE provide

Richardson with notice that she had been placed on "the Ineligible List" and would not be considered for future employment with the DOE." *Id.* at ¶ 38.

Richardson did not find out about this administrative action until July 20, 2015. *Id.* at ¶¶ 39. 40. The circumstances by which she discovered this action occurred when she applied for an educational position with Manual Therapy Center, Inc. on April 23, 2015.  *Id.* at ¶ 40. As part of the hiring process, her name was submitted for security clearance to DOE. *Id.* at ¶ 41. She was advised by Manual Therapy Center, Inc that her application for a security clearance was denied and it was not until July 20, 2015 that she learned that the DOE had placed Richardson on the "Ineligible List." *Id.* at ¶ 42. On July 28, 2015, Richardson received a letter for the DOE advising her that because of a "report" dated August 14, 2012, Richardson was denied a "security clearance" to work as an Educational Administrator for the DOE. *Id.* at ¶ 43.  The letter, annexed as Exhibit "1" to the Complaint, written by the Chief Executive Officer of the Division of Human Resources for the DOE, stated, in pertinent part, "[a]fter a thorough review in accordance with the applicable provisions of law, your application is denied." [ECF Doc 1-1].  The letter continued:

> "Your application for security clearance is denied due to your adverse employment history with the New York City Department of Education (DOE). While employed as an Educational Administrator for the DOE, you were subject of an OSI Report dated 8/14/12. This report ***found*** that, in your position as a Committee on Preschool Special Education (CPSE) Administrator, you failed to follow the timelines under Section 200.16 of the NYS Regulations and Section 4410 of Education Law Article 89, you failed to respond to the request of both a parent and service provider to change a student's Individualized Education Plan (IEP), you failed to contact said student's mother and service provider to review and ensure that they could be in attendance during an IEP review, and you falsely documented that said mother had participated, via teleconference, in the annual review of her child's IEP."

(Emphasis Supplied).

Richardson had never received any such report from the DOE following her resignation in July 2012. Complaint at ¶ 44. In further investigating the circumstances surrounding the issuance of the report, she checked her personnel file with DOE and discovered that no record of such action was contained in her personnel file. *Id.* at ¶ 45. 46.  On August 12, 2015, Richardson's prior counsel, Neal Rosenberg, requested access to her file so he could see the report and respond to it. A copy of the letter is annexed as Exhibit "2" to the Complaint. [ECF Doc 1-2].  On September 9, 2015, Malory Sullivan, First Deputy Director, Office of Personnel Investigation, Division of Human Resources for the DOE, provided Richardson's counsel with a  copy of the August 12, 2012, "Investigative Report" in which it was recommended that "Rosemarie Richardson be placed on the Ineligible List and not be considered for future employment with the DOE." [ECF Doc 1-3 at 8]. ***A copy of the Report was never sent to Richardson until it was transmitted to her counsel on September 9, 2015.*** Complaint at ¶ 44; [ECF Doc 1-4 at p. 1]. Subsequently, Mr. Rosenberg requested that Ms. Sullivan reconsider the determination via letter dated September 29, 2015 in which he attached a copy of a detailed response from Richardson. A copy is annexed as Exhibit "4" to the Complaint. *Id.* [ECF Doc 1-4].

In her response, Richardson detailed that the investigation—which never resulted in DOE filing any charges against Richardson—precluded Richardson's access to documents pertaining to the investigation and failed to check its own DOE phone records for documentation that the telephone conference Richardson reported had actually occurred.  As she stated: "As further proof of their refusal to cooperate with their own investigation was there sole reliance on third party gossip rather than doing true investigative work such as checking DOE phone records on

June 28, 2011 to correctly determine if in fact there was a DOE phone conference between

myself and said Mother A, or if the parent was lying. The failure of OSI to do this taints their

own 'investigation'".  ECF Doc 1-4 at 2. With respect to phone conference Richardson was

accused of making up, Richardson further stated:

> "How could I have failed to contact Mother to ensure her attendance
> during an IEP review when I had to have a prior conversation with said
> Mother to obtain a phone number to hold the meeting at a specific date,
> time and room with DIE telephone access at the CPSE office before the
> meeting commenced on June 28, 2011?

> "How could I have falsely documented that said Mother had participated,
> via teleconference? OSI has alleged fraud to my reputation. An OSI
> allegation stated I unilaterally had a meeting with myself and falsified the
> IEP document. ***OSI has failed to investigate this allegation with no
> apparent investigation of the DOE telephone recordings made on June
> 28, 2011 from a DOE telephone I conducted at CPSE with said Mother.***
> Why did OSI suppress it's own investigation by not checking phone
> records? Incidentally, Mother A was urgent to have the meeting as soon as
> possible and agreed prior to have the meeting on the phone with a T for
> parent signature due to her busy schedule as a doctor with a new position."

(Emphasis Supplied).

With respect to the OSI allegation that Richardson failed to follow the timelines under

Section 200.16 of the NYS Regulations and Section 4410 of Education Law Article 89 with

respect to the subject IEP, Richardson pointed out that she had inherited the subject case from

Lisa Saracuse and that there was no clear timeline in the report showing the progress in the case

and the alleged violation of any mandated timelines. [ECF Doc 1-4 at p. 5].

Richardson also contested the OSI finding that the student's parent and service provider

were required to be at the meeting which Richardson held by telephone conference. She stated:

"This was a blatant and false allegation. This was not an annual review meeting but a requested

review by the Mother to change service provider agencies and said Mother was on the telephone

with me. I believe said Mother and Mr. Treiber [agency representative] are confusing the

7

reconvene meeting with an annual review. OSI took Mr. Treiber's word that the service provider must be physically present to make the IEP amendment valid. In fact based on the actual parental request at a live meeting we were able to correctly amend the IEP." *Id.* at 4-5.

In the OSI letter dated August 14, 2012, Ms. Bernadino wrote that Richardson was "very evasive" at the investigative meeting on December 16, 2011.  *Id.* at 6. [3] Richardson pointed out that she did not have her file, was not given notification of the subject meeting and was not allowed access to the file so that she could answer any questions in detail about one of a thousand cases handled in the seven months prior to the investigative meeting on December 16, 2011. *Id.* at 2, 4.

Richardson concluded: "How could I have an adverse employment history with the DOE? My career began working at 65 Court Street, Human Resources…I worked as a Special Education Teacher, Supervisor of Special Education, Instructional Support Specialist, Assistant Principal I.A., CSE Teacher Assigned and CPSE Adminstrator from 1971 to 2012. I never had a blemish to my career and reputation and I received only "S" ratings during the 30 years in service with the DOE."

Following Rosenberg's submission of Richardson's response by letter dated September 29, 2015, by letter dated October 20, 2015, Rodi, Director of the Office of Employee Relations for the DOE, "affirmed" the original findings in the "approved" recommendation dated August 14, 2012 after "due consideration". A copy of the letter dated October 20, 2015, which was mailed by Rodi to Richardson, is annexed as Exhibit "5" to the Complaint. [ECF Doc 1-5]. The determination was mailed to Richardson at her home address and to her attorney.  *Id.* Pursuant to

---

[3] It is curious how Bernadino could so conclude when she was not present at the meeting which was conducted by Steel. [ECF Doc 1-3 at 2].

CPLR § 2103(b), such mailing added five days to the prescribed deadline for Richardson to challenge such determination so that her time to file an Article 78 proceeding was four months from the time the determination becomes "final and binding." CPLR § 217.

## STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to FRCP 12(b)(6), the Court must accept the factual allegations set forth in the Complaint as true and draw all reasonable inferences in favor of plaintiff. *See Cleveland v. Caplaw Enters.,* 448 F.3d 518 (2d Cir. 2006). A Complaint must simply allege a plausible set of facts that raise a right to relief above the "speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

## ARGUMENT

### POINT I

**DEFENDANTS PLACED RICHARDSON, A THIRTY YEAR TENURED ADMINISTRATOR, ON AN 'INELIGIBLE LIST' *AND* DENIED HER A SECURITY CLEARANCE THEREBY PRECLUDING HER FROM EMPLOYMENT WITH A DOE CONTRACTOR. IN DOING SO, DEFENDANTS VIOLATED RICHARDSON'S RIGHT TO DUE PROCESS BECAUSE SUCH ACTION WAS DONE WITHOUT PROVIDING RICHARDSON WITH NOTICE OF ANY DISCIPLINARY CHARGES AND AN OPPORTUNITY TO BE HEARD.**

"The essential requirements of due process ... are notice and an opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 US 532, 546 (1985). It is settled that a public employee with a constitutionally protected property interest in her employment, is entitled to "notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterwards." *Locurto v. Safir*, 264 F3d 154, 171 (2d Cir.2001) (emphasis supplied). At a minimum "due process" requires that *prior* to termination such an employee be

on notice of the charges, an explanation of the employer's evidence, and an opportunity to present evidence to the contrary. *Otero v. Bridgeport Housing Auth*., 297 F3d 142, 151 (2d Cir 2002). Even with the availability of an Article 78 post-termination hearing, a failure to provide pre-termination hearing violates due process because it violates *Loudermill's* requirement that an employee have "minimum due process before being terminated." *Todaro v. Norat*, 112 F3d 598 (2d Cir 1997); *Leonardi v. Bd. of Fire Comm'rs of Mastic Beach Fire Dist.*, 643 FSupp  610, 613 (EDNY 1986) (failure to provide volunteer firefighter with a pre-termination hearing prior to his termination "constituted a deprivation of a property interest without the due process of law guaranteed by the Fourteenth Amendment"). In sum, a violation  of procedural due process occurs when a plaintiff is "deprived of property without constitutionally adequate pre- or post-deprivation process." *J.S. v. T'Kach*, 714 F3d 99, 105 (2d Cir 2013). The placement of a tenured professional on an ineligible list without due process constitutes a "stigma plus" due process violation. *Behrend v. Klein*, 2006 WL 2729257 (EDNY 2006).

In support of the motion to dismiss, Defendants rely on cases that are plainly inapposite because in each of those cases the individual plaintiffs did not have tenure and were informed of charges prior to their respective resignations.

For instance, Defendants cite *Finley v Giacobbe*, 79 F3d 1285, 1288 (2d Cir 1996) for the proposition that an employee who resigns before being discharged forecloses the employee from seeking redress for due process violations.  However, that case involved a *probationary employee* who resigned after she was advised she would not be awarded permanent status after her probationary period ended.  *Id.* In ruling on the constitutional claim, the Second Circuit held that Finley, "had no reasonable expectation in continued employment as a ***probationary employee***, and therefore has no actionable property right on which to base her § 1983 claim." *Id.*

at 1298.  (Emphasis Supplied). *See also Reed v. Medford Fire Dep't, Inc.,* 806 F. Supp. 2d 594, 610 (EDNY 2011) (at will public employee could not complain of procedural defects in termination from position in which he had no "constitutionally protected interest").  Defendants also cite *Trachtenberg v. Dep't of Educ. of City of New York*, 937 F. Supp. 2d 460, 470 (SDNY 2013) for the proposition that a resignation deprived the plaintiff of contesting year end evaluations which she claimed would typically trigger a teacher removal proceeding, however, the court held that any such claim was "speculative" in light of the resignation.

Richardson's right to a "pre-termination" hearing are based on her property rights and on the fact that the Defendants damaged her reputation without due process.

Her property rights rest on her State law right to hearing prior to being disciplined and/or removed as a tenured employee pursuant to New York Educational Law § 3020-a which provides that, "No person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause…." At a minimum, § 3020-a provides for a hearing before a single hearing officer and 3020-a(5) requires notice of a hearing officer's decision after which an employee may make application to the New York Supreme Court.  *See also Dunn v. New York City Dep't of Educ.*, 32 Misc 3d 1230(A) (NY Co Sup Ct 2011). A person who resigns with tenure retains such status even after a resignation.  *Vaccaro v. Bd. of Educ. of City Sch. Dist. of City of New York*, 39 Misc. 3d 1241(A), 975 N.Y.S.2d 370 (Sup. Ct. 2013), *rev'd on other grds*, No. 104435/12, 2016 WL 3006046 (1st Dep't AD May 26, 2016).

None of the cases cited by the Defendants have any applicability to Richardson who was a tenured administrator with 30 years of experience. Defendants argument that her retirement somehow deprived the Defendants of the ability to move forward with the service and filing of charges is self-serving, without logic and not supported by any case law pertaining to a tenured

11

administrator.  Richardson was interviewed in December of 2011. She retired in July 2012. DOE certainly had ample time to serve and file charges before her retirement and, assuming, *arguendo* they it needed more time, she could have been put on notice that the charges were being pursued and then Richardson could have had a choice as to whether to contest them or not. The placement of her name on an "ineligible list" amounted to a "stigma" that has deprived Richardson of property and liberty—the ability to be employed with any contractor who does business with the DOE.  As a *tenured administrator* Richardson had the right to notice and an opportunity to be heard before Defendants could deprive her of future employment. *E.g., Guttila v. City of New York,* No. 14-CV-156, 2015 WL 437405, at *7 (JPO).

By impugning her competence and honesty without affording Richardson an opportunity to respond, Defendants violated her "liberty" giving rise to a "stigma-plus claim." To prevail on his claim that she was deprived of a constitutional interest in his reputation without due process of law, Richardson must allege "(1) the utterance of a statement that is injurious to reputation, that is capable of being proved false, and that is claimed to be false; and (2) some tangible and material state-imposed burden in addition to the stigmatizing statement." *Blythe v. City of New York,* 963 FSupp2d 158 (EDNY 2013) (citations omitted).  Damage to reputation does not give rise to a liberty interest claim unless it is coupled with some significant deprivation, such as dismissal from government employment or here, placement on an "ineligible list" precluding future employment. *E.g., Storman v. Klein*, 09–CV–0338, 2009 U.S. Dist. LEXIS 34628, at *54–*55, 2009 WL 1035964 (S.D.N.Y. Apr. 20, 2009) (Report and Recommendation) (internal citations and quotation marks omitted); see also *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F3d 623, 630-31 (2d Cir 1996) (stigmatizing statement actionable where it denigrates professional's competence and reputation as to "put a significant roadblock in that employee's

continued ability to practice his or her profession."); *Abelli v. Ansonia Bd. Of Educ.*, 987 FSupp2d 170, 174-5 (DConn 2013). Here, there is no question of stigma as the subject report impugned Richardson's honesty and competence, precluding future employment, which constitutes the "plus". It is also undisputed that she claims that such statements were false. The second prong of the stigma-plus test—namely, a state-imposed burden or alteration of status— depends on whether the burden was the result of "random and unauthorized governmental acts", or pursuant to an established state procedure. Where the deprivation is pursuant to an established procedure, the governmental entity—here the City--can predict when it will occur and is in the position to provide a *pre-deprivation hearing*. As cogently explained in *Duchemin v. Inc. Vill. of E. Hampton*, No. 14-CV-5976 ADS SIL, 2015 WL 6680238, at *10-11 (E.D.N.Y. Oct. 31, 2015), the tenured public employee is entitled to oral or written notice of the charges against her, an explanation of the employer's evidence, and an opportunity to present her side of the story. *11 *Storman*, 2009 U.S. Dist. LEXIS 34628, at *66–*70, 2009 WL 1035964.

In sum, that the subject report impugned Richardson's honesty, integrity and competence. It is undisputed that she was place on an "ineligible list" depriving her of future employment with any contractor doing business with the DOE.  In fact, she lost an opportunity to be employed by the Manual Therapy Center, Inc. as a result of the denial of her security clearance based upon the secret August 14, 2102 report. It is further undisputed that prior to placing Richardson on the "ineligible list" she received no notice of charges and/or an opportunity to contest any allegations. The Defendants conduct thereby violated Richardson's rights to a "pre-termination" hearing and the Defendants' application for dismissal should be denied in all respects.

13

**POINT II**

**THIS COURT SHOULD ACCEPT SUPPLEMENTAL JURISDICTION OVER RICHARDSON'S STATE CLAIMS BECAUSE THEY FORM PART OF THE SAME CASE AND/OR CONTROVERSY.**

Richardson brings two state law claims both of which she asserts should be adjudicated in this Court together with her federal claim, all of which are based on identical facts.  Richardson's second cause of action is predicated on a violation of New York Education Law § 3020-a, which provides that "No person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause…" Richardson's third cause of action claims that by placing Richardson on the "ineligible list" and in "affirming" such determination by letter dated October 20, 2015, Defendants acted in an arbitrary and capricious manner, committed an error of law and procedure and/or an abuse of discretion in violation of CPLR § 7803(3).  This Court has supplemental jurisdiction of such state claims pursuant to 28 USC § 1367 because the state claims are so related to the federal claims they are part and parcel of the same case and/or controversy.

Defendants motion to dismiss at 12-14 argues that this Court should not entertain Richardson's Article 78 claim. A recent case in this Court cogently explains the applicable standard for the exercise of supplemental jurisdiction. In *Louis v. New York City Hous. Auth.*, No. 15 CV 3122 (NRB), 2016 WL 297563, at *11 (S.D.N.Y. Jan. 14, 2016), the Court, citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988), noted that district courts should balance the values of judicial economy, convenience, fairness, and comity in deciding whether to exercise supplemental jurisdiction. The court further noted where underlying federal claim(s) are dismissed, in most cases, supplemental jurisdiction would be denied. Currently, Richardson's

federal claim remains before this Court. In asking for dismissal of the Article 78 at this time, Defendants presume that Richardson's federal claim will be dismissed.  We disagree.

In the event this Court grants the requested dismissal of Richardson's federal claim, in adjudicating the motion, as a matter of judicial economy, we submit that the Court should adjudicate Richardson's Article 78 claim.  The reason? It is obvious and, in fact, uncontested, that Richardson was never given notice of the charges and never given an opportunity to contest the charges.  The placement of Richardson's name on the ineligible list constituted a violation of law and procedure, an abuse of discretion and was arbitrary and capricious in violation of Article 78, In the interest of judicial economy, in adjudicating this motion, we respectfully request that this Court vacate the determination to place Richardson on the ineligible list and remand the matter to DOE so that Richardson can have a fair opportunity to contest any specific charges that DOE may care to assert against Richardson. A 30 year tenured administrator with an unblemished record deserves nothing less.

Finally, Defendants inaccurately assert in Defendants' Memorandum at 14 that Richardson's claim is "untimely" on the theory that she received notice that her application for a security clearance was denied on July 28, 2015 and therefore she should have filed an Article 78 in four months or on or before November 28, 2015. Defendants overlook the uncontested fact that the July 28 determination was based upon the OSI Report dated 8/4/12 which was never given to Richardson. [ECF Doc 1-1]. In fact, it is uncontested that Richardson's attorney had to request the OSI Report so he could see the report and respond to it. [ECF Doc 1-2]. He did not receive the report until September 9, 2015 [ECF Doc 1-4]. Obviously, Richardson could not respond to the report until she had received a copy. Thereafter, Richardson and her counsel opposed the report in a submission requesting reconsideration via letter dated September 29,

15

2015 which included a detailed rebuttal from Richardson. [ECF Doc 1-4]. Thereafter, Rodi, the Director of the Office of Employee Relations for the DOE, "affirmed" the original findings in the "approved" recommendation dated August 14, 2012 after "due consideration." [ECF Doc 1-5]. Such "affirmance" is the "final and binding" determination which is the subject of the Article 78 proceeding. As the determination was mailed to Richardson and her counsel on or about October 20, 2015, pursuant to CPLR § 2103(b) the date for filing an Article 78 proceeding was extended five days so that the time limit for filing the Article 78 proceeding was four months and five days or February 25, 2016. Inasmuch as the instant summons and complaint was filed on February 22, 2016,  the Article 78 claim is timely and the motion to dismiss the Article 78 claim should be denied.

## **CONCLUSION**

In light of the foregoing, the application of Defendants for dismissal of the Complaint should be denied in its entirety.


Dated:      New York, New York
            June 9, 2016


                                        ITKOWITZ PLLC
                                        *Attorneys for Plaintiff*

                              By:       /s/ Jay B. Itkowitz
                                        Jay B. Itkowitz, Esq. (JBI 5349)
                                        26 Broadway, 21st Floor
                                        New York, New York 10004
                                        (646) 822-1801
                                        jitkowitz@itkowitz.com


OF COUNSEL:

JAY B. ITKOWITZ